PETER W. TITUS ET AL. *v.* J. H. JOHNSON, ADM'R.

1. THE SEIZIN NECESSARY TO SUPPORT TRESPESS TO TRY TITLE.— The owner of land has such seizin by reason of his title, whether legal or equitable, as will support an action of trespass to try title in this State; and he may elect to consider himself ousted, and bring suit against an adverse claimant of the land, even though such claimant has never been in actual possession of the land.

2. STATUTE CONSTRUED—TRESPASS TO TRY TITLE.—It was the intention of the Legislature, in the "Act to provide the mode of trying titles to land," (Paschal's Dig., art. 5292,) to provide a simple and effectual remedy for determining every character of conflicting titles and disputed claims to land, irrespective of its actual possession.

3. STROUD *v.* SPRINGFIELD EXPLAINED.—The point ruled in the case of Stroud *v.* Springfield is, that the plea of "not guilty" does not admit a trespass on the part of the defendant, but calls upon the plaintiff not only to prove title in himself, but also to prove an actual or a constructive trespass by some character of adverse claim or assertion of title or interest by the defendant.

4. EFFECT OF RECORD OF DEED DULY ACKNOWLEDGED.—The effect of the record of an instrument concerning lands, on its face regularly acknowledged, or proved for record and duly recorded, cannot be attacked by showing (1) that the officer who took the acknowledgment or proof had an interest in the land, or (2) by showing that the acknowledgment was taken outside the territorial limits of the

officer's appointment, or that the officer at the time was exercising two incompatible offices.

5. CASES DISCUSSED AND LIMITED.—Brown *v.* Moore, 38 Tex., 645 ; Johnson *v.* Brown, 25 Tex. Supp., 120 ; Johnson *v.* Norman, 43 . Tex., 628.

6. CERTIFICATE OF PROOF, &c., CONCLUSIVE FOR PURPOSES OF REGISTRATION.—When an instrument, with certificate of acknowledgment or proof of execution as required by law, is presented to the recorder, it is made his imperative duty to record it. Neither statutory nor other authority has been shown authorizing the effect of such record to be destroyed by parol evidence impeaching the truth of the certificate upon which the record was made.

7. LAWYER AND CLIENT—CONFIDENTIAL COMMUNICATION.— Conversations, by parties proposing to buy lands, with an attorney, in which the attorney spoke of the existence of certain claims to the land, no payment being made or demanded for counsel : *Held*, That the communication so made by the attorney to said parties was not confidential.

8. EFFECT OF DECREE IN DISTRICT COURT ANNULLING ADMINISTRATOR'S SALE.—In a suit by an administrator on a sale note and to enforce the vendor's lien against land sold by him as administrator, a decree was rendered by consent annulling the sale : *Held*, That such decree was not void by reason of it not having been authorized or approved by the Probate Court having jurisdiction of the estate.

9. IMMATERIAL TESTIMONY.—The admission, over objection, of testimony immaterial and not calculated to mislead the jury, is not ground for reversal.

10. ADMISSIONS OF VENDOR—EVIDENCE.—In an action of trespass to try title, where plaintiff relied on an equitable title, and defendants claimed to be subsequent purchasers of the legal title and without notice, and were also relying upon the non-payment of the purchase-money by the plaintiff as destroying the equity : *Held*, That the admissions of the vendor against his interest and as to the payment were admissible against parties claiming under him by subsequent purchase.

11. EFFECT OF ALLOWING A SALE NOTE BARRED BY LIMITATION.— Nor would a note claimed to be a purchase-money note, and barred by limitation, allowed by the administrator, be regarded as a basis of an equity against the estate of such purchaser.

APPEAL from Hunt.   Tried below before the Hon. Green J. Clark.

November 26, 1875, James H. Johnson, administrator *de*:

*bonis non* of the estate of James H. Johnson, deceased, in an amended petition, abandoning all other pleadings, set out his appointment, alleging the facts constituting the title of his intestate to two thousand six hundred and eighteen acres of land, located and patented under an unlocated balance of the headright certificate of M. H. Ragsdale for a league and labor of land; further alleging that the defendants, with notice of the title of his intestate, were setting up a false or fraudulent claim to said premises under deeds from said Ragsdale, and " are trespassing on said land by force and arms, ejecting petitioner therefrom, and greatly slandering the said title of said estate to said land, and cutting down and carrying off great quantities of timber from the land," &c.

November 26, 1875, defendants pleaded general demurrer and specially excepted, because the petition did not allege (1) that defendants were in possession of the land at the institution of the suit; (2) it was not alleged that plaintiff ever was in possession; (3) because the title set up is only equitable, and it was nowhere alleged that plaintiff ever was in actual possession. Defendants also pleaded not guilty.

Pending the suit defendant Titus died, and his heirs became parties.

July 7, 1877, plaintiff amended, alleging that, since the filing of the suit, defendants had abandoned the land and that plaintiff had regained possession, but that defendants continued to assert their false and fraudulent claim to the land, &c.

July 11, 1877, the exceptions of defendants and their demurrer were overruled.

January 14, 1878, the cause was submitted to a jury upon the following instructions:

" 1. The written transfer of the headright certificate of M. H. Ragsdale to James H. Johnson, deceased, dated July 9, 1844, and the instrument dated December 9, 1856, read to the jury in evidence, together with field-notes of the survey of the land upon which said certificate was located and the

patent issued thereon, are sufficient evidence in this case to enable the plaintiff to recover against the defendants, unless the jury are satisfied from the evidence that the defendants, or some of them, are purchasers of the land claimed by them respectively in good faith, without notice, actual or constructive, of the claim of plaintiff's intestate.

"2. The instrument signed by M. H. Ragsdale, dated December 9, 1856, and recorded July 21, 1868, was constructive notice of the claim of plaintiff's ancestor to the land in controversy to all the defendants who purchased any portion of said land from Ragsdale after the date of such filing.

"3. That each and all of the defendants who purchased for a valuable consideration any portion of the land in controversy from Ragsdale prior to the 20th day of July, 1868, without notice of Johnson's claim to said land, are innocent purchasers, and if there are any such the jury should find in favor of such defendant.

"4. Defined actual notice.   *   *   *

"5. In regard to the payment of the purchase-money for the Ragsdale certificate, the jury are charged that it is immaterial in this action whether Johnson did or did not pay the purchase-money therefor; and the plaintiff's right to recover is not affected thereby."

On the trial plaintiff offered in evidence a certified copy of a transfer from Ragsdale to Johnson, of date 9th December, 1856, with certificate of acknowledgment and of record. (The instrument is set out in Patterson *v.* Lowry, 48 Tex., 409, 410.)

To this defendants objected, (1) because W. S. McClure, the officer who took the acknowledgment, held two offices at said time, that of deputy surveyor and notary public of Fannin county; (2) because McClure, the officer, was notary public of Fannin county, and took the acknowledgment in Lamar county; (3) because McClure was, at the time he took said acknowledgment, an interested party, and owned a part of said land as a locative interest; (4) because the

transfer proposes to convey certificate number 453, and the patent for the land sued for covers certificate number 454.

In support of these objections the testimony of McClure, by depositions, showed that he resided in Fannin county, Texas, in 1856, and held the offices of deputy surveyor and notary public; that the transfer was made in Lamar county and acknowledged in that county, but certificate was made in Fannin; that he had no direct interest in the transfer, but, under a contract with James H. Johnson, witness located the land for one-fourth interest.

The objections were overruled.

On the trial plaintiff introduced Daniel Upthegrove as witness, and asked him whether he had informed the defendants Long, Fowler, and Halsey of the claim of plaintiff to the land; to which defendants objected, because the communication, if made, was confidential and between attorney and client.

The witness was then examined, (the jury having been withdrawn,) stating that he was an attorney in this cause for the plaintiff; that he was formerly an attorney at law in Paris, Texas, and had known defendants well; that in the spring of 1868, after he had moved to Greenville, defendant Fowler came to the hotel where witness was boarding, and, during a conversation about purchasing land, asked witness "if Ragsdale had any title to the land in controversy"; that witness told Fowler that Johnson's estate had a claim to the land; did not think Ragsdale had any title; witness made no charge, received no fee for what he did, and he did not regard himself as attorney of Fowler; that in the spring of 1873 he had received a letter from defendant Long, asking if Ragsdale had any title to the land in controversy; witness answered that he did not think Ragsdale had any title. Soon afterwards witness saw Long, and they talked said matter over again, and witness gave the same opinion. That on the day of. a trust sale under a deed from Ragsdale, under which defendant Halsey claimed and at which he purchased, he asked witness about

the title to the land, when witness informed him that Johnson's estate claimed the land, and that witness did not think Ragsdale had any title; that witness wrote the deed for Halsey, but made no charge for advice, and did not consider himself as employed by said parties; Halsey paid witness for writing the deed, and that was the only charge made; witness was at that time a partner of Hardin Hart, and derived his knowledge from Hart & Brown, who had been attorneys for Johnson's estate, and defendants had not communicated to witness any fact concerning the claim of Johnson, but witness had communicated it to them; witness had never investigated the title to the land himself.

Whereupon, and the jury having returned, and over the objections of defendants, it was asked of witness: "Did you or not, prior to the date of Halsey's purchase, impart to him that Johnson claimed the land in controversy?" To which witness replied: "I did."

"Did you or not impart to J. L. Fowler, prior to 1870, that Johnson claimed the land in controversy?" Ans. "I did, in 1867 or 1868."

"Did you or not impart to Sam Long the information that Johnson claimed the land in controversy?" Ans. "I did, in the spring of 1873."

In the progress of the trial, and after the defendants had read in evidence transcript of proceedings in the Probate Court of Red River county, showing the sale of the land by Caldwell, Johnson's administrator, to Rattan and Stevens, the plaintiff read, over objections, a decree of the District Court of Hunt county in the case of Caldwell, adm'r, *v.* Joseph G. Stevens and others, in which, by consent, a decree was rendered rescinding and cancelling the sale made by the administrator and revesting the land in the estate.

The objections urged to this decree were principally the want of jurisdiction of the District Court to revise in that mode the acts of the County Court, and because Ragsdale and the defendants were not parties and not bound by it.

Plaintiff also, in rebuttal, over objections, proved by Hardin Hart that in the probate sale of the land by Caldwell, administrator, to Rattan and Stevens, the deed was made to Rattan, who seemed to be the head man or acting for the others. (The sale was made in several distinct parcels, the return showing who was the purchaser, but the deed was made to Rattan, and a joint note made for the lots bought by Stevens and Rattan.)

As to other matters of evidence they were not controverted, save in attacking the verdict of the jury. The opinion sufficiently indicates the other parts of the testimony.

The jury found for the plaintiff and the defendants appealed.

The errors assigned and relied on are—

1 and 2. The action of the court in overruling the demurrer and exceptions of defendants.

3. Overruling the objections to the certified copy of the transfer of date December 9, 1856, and objections to the authority of the notary taking acknowledgment, &c.

4. Admitting the testimony of the witness Upthegrove.

5. Admitting, over objections, the decree of the District Court of Hunt county cancelling the sale made by order of the Probate Court.

6. Overruling the objections to testimony of Hardin Hart.

7 and 8. In refusing charges asked and in giving the charges set out above.

9 and 10. In overruling motions for new trial and in arrest of judgment.

*E. W. Terhune*, for appellants.

I. Every petition, in order to set up a good cause of action, in suit of trespass to try title, must allege that the defendants are in possession of the property sued for.

In this suit there is no definite allegation that the defendants are in possession, or ever were in possession. (Herrington v. Williams, 31 Tex., 460.)

II. In every suit the plaintiff must show a good cause of

action, and in suits for the recovery of lands the pleadings must either show an action of trespass to try title or some equities to authorize a recovery.

The court held that this suit was only good, upon the pleadings, as an action of trespass to try title; yet, by amendment, plaintiff alleges that he has both title and possession. What, then, has he to sue for? and what sort of an action do his pleadings set up?

III. No instrument can be legally admitted of record, if not properly acknowledged by an officer having legal authority to do so; and no man can hold two offices at the same time, the acceptance of one being an implied resignation of the other; nor has any notary public the right to go out of his county to take an acknowledgment; nor can a person who is interested in the property conveyed take an acknowledgment.

The transfer dated December 9, 1856, was acknowledged before W. S. McClure, notary public of Fannin county. McClure then held the two offices of county surveyor and notary public, and he went into Lamar county to take the acknowledgment. He also had a one-third interest in the land, for locating it.

IV. An instrument of writing, as a muniment of title, if not properly recorded, must be proven up as a common-law instrument.

In this case the transfer was not proven up, but offered as a record instrument.

V. No instrument not properly recorded is notice to innocent purchasers of any other title; nor can any person be charged with notice when the instrument has been improperly admitted of record.

The charge of the court cuts off all defense of those who purchased after the filing of the said transfer for record, July 20, 1868, and the court construes that as notice and as an evidence of title.

VI. No attorney can testify on any matter that grew out

of a confidential consultation with a client, without the consent of the client, it matters not what their relations may be afterwards.

In this case, Upthegrove, now the attorney for Johnson, then, as we claim, acting as attorney for Fowler, Longs, and Hulsey, appellants here, was put on the stand to prove that he had told said parties of Johnson's claim to the land, when he was their attorney, consulted by them, thereby charging them with notice.

VII. The court erred in overruling defendants' objections to the introduction of the decree of the District Court of Hunt county in cause of Caldwell *v.* Stevens.

When an administration is pending in one county on an estate, and a sale of lands in a different county is made by the administrator under the probate law, and suit instituted by said administrator to recover the debt due for the sale of the land, in the District Court of the county where the land lies, praying for a foreclosure of a vendor's lien, said court has no right to cancel the note and decree the land back to the estate, without the consent and approval of the court in which the administration is pending. James C. Caldwell, administrator of Johnson's estate, obtained an order from the Probate Court of Red River county, in 1858, to sell the lands in Hunt county, which sale was made, and the administrator reported to said court the sale of the land in controversy in this suit to John Rattan and others, which sale was confirmed and note taken, signed by John Rattan, J. G. Stevens, J. D. McCamant, and W. G. Brown, for $1,481.93, due twelve months after date, April 6, 1858. On the 14th of May, 1860, Caldwell, administrator as aforesaid, brought suit in the District Court of Hunt county on said note, praying for a foreclosure, and on the 17th of October, 1870, a compromise decree was rendered by said court, on an agreement signed by Rattan alone, cancelling the note and decreeing the title to the lands in Johnson's estate. That land is the land sued

for. The Probate Court of Red River county never ordered nor ratified said decree.    *    *    *

VIII. The District Court of Hunt county, in a suit brought on a note and for foreclosure against four defendants, had no right to cancel a deed and note and direct title on an agreement signed by only one defendant, when the probate record shows that the party who signed the agreement did not have title in but one of the four lots sold. Hence there is an outstanding title in the other three lots that said court had no right to decree back to the estate or to plaintiff.

The order of the Probate Court confirming the sale, shows lot number one was bought by Rattan, and lots numbers two, five, and seven by Stevens; while the decree of the District Court of Hunt county decrees all of said four lots back into Johnson's estate, out of Rattan alone.

IX. The court erred in overruling defendants' objections to witness Hart's testimony.

Parol evidence is inadmissible to vary the record. The probate record shows that at the sale lot number one was bought by Rattan; that lots numbers two, five, and seven were bought by Stevens; and that the sale was confirmed and deed ordered to be made. Hart testifies that deed was made to Rattan to all, but what relation existed between them he knows not.

X. Where a party brings suit, relying on an equitable title, against one holding a legal title, the party seeking equity must show that he has an equitable demand. In other words, when a man sues for land, relying on an equitable title, he must show that he has paid the purchase-money therefor; and when it is denied by proof the matter should be submitted to the jury under proper instructions.

Plaintiff relied on an equitable title against defendants who had legal title. Witness Ragsdale testified that Johnson had never paid for the land. Defendants asked a charge on that subject.

*Bennett, Ballenger & Bennett,* also for appellants.

I. This suit being an action of trespass to try title, the judgment is not sustained by the evidence, because defendants plead not guilty, and the plaintiff failed to prove that defendants were in possession of the land sued for. (Stroud *v.* Springfield, 28 Tex., 649.)

II. In order for plaintiff to sustain this as a suit to remove clouds from title, he should have averred and proved that he held the actual possession as well as owned the title, which was not done. (Herrington *v.* Williams, 31 Tex., 460.)

III. An acknowledgment taken by an officer interested in the subject-matter is void, and its recording does not give notice. (Brown *et al. v.* Moore, 38 Tex., 645.) Also, the taking of an acknowledgment in Lamar county by a notary for Fannin is void, and its being recorded confers no right, and especially as it was only a certificate. (25 Tex. Supp., 126; 43 Tex., 629.)

The acknowledgment obtained from Ragsdale by McClure was procured through deception, and proof of this is permissible. (15 Tex., 333.) For these reasons Ragsdale's transfer of December 9, 1856, acknowledged before McClure, should not have been admitted as evidence. (Paschal's Dig., art. 4687.)

IV. Permitting the introduction of the testimony of Upthegrove was error, it being privileged communication between attorney and client. (1 Greenl. on Ev., sec. 236, *et seq.;* 18 Tex., 135.)

V. There were not the necessary parties nor the proper predicate in either Caldwell's petition of the 14th of May, 1860, or Rattan's answer of July 29, 1869, to authorize the decree of the court. At the time of its rendition the District Court had no original probate jurisdiction, and none was conferred by the adoption of the Constitution of 1869.

Rattan's answer, offering to rescind his contract, was filed before the 30th of March, 1870. (Paschal's Dig., art. 1427, note 536; Const. of 1869, sec. 7.)

Before the 30th of March, 1870, Rattan could not sue to rescind the contract of sale of the land, except in Red River county, where Johnson's estate was administered on. (Neill v. Owen, 3 Tex., 145; Paschal's Dig., art. 1423.)

The record from Red River county shows that the land was advertised, sold, and purchased by Rattan, he giving his notes for the purchase-money; the sale reported to the Probate Court by the administrator; the sale confirmed and the administrator ordered to execute a deed, and the deed was made to Rattan. Rattan was invested with full title, and his after act of surrendering to the administrator his deed for the land did not divest him of the title, (40 Tex., 530,) and the Probate Court had no power at a subsequent term to set aside and annul its order made at a former term. (Davis v. Stewart, 4 Tex., 225.)

VI. In admitting the testimony of Hart to explain and contradict the transcript from Red River County. (25 Tex. Supp., 244.)

VII. In permitting plaintiff to recover by virtue of an equitable title, without proving the payment of the purchase-money for the certificate. (Briscoe v. Bronaugh, 1 Tex., 326; 24 Tex., 364.)

The vendor's lien does not exist in favor of an administrator; he must take a special mortgage. (31 Tex., 627; 28 Tex., 734.)

A suit to enforce the vendor's lien no notice to third parties. As to what is notice, see 47 Tex., 457; 29 Tex., 222; 17 Tex., 149; 25 Tex., 66, 225, 457; 26 Tex., 616; 32 Tex., 679.

Rattan was legally bound to pay his notes given for the land, as there was no warranty attaching to the sale by the administrator. If the purchase-money is not paid at maturity the vendor may elect to rescind and recover the land by suit. (Secrest v. Jones, 21 Tex., 130; 11 Tex., 246; 19 Tex., 76; 20 Tex., 711; 2 Story's Eq. Jur., 776–778.)

Ragsdale having sold to Johnson on time, Johnson could'

not compel him to convey title without tendering the purchase-money; and Johnson having failed to pay at maturity, Ragsdale was legally authorized to procure a duplicate certificate, to make new field-notes, and to procure a patent; and others having bought part of the land from him before suit was brought by Johnson's administrator on Rattan's notes, they acquired a good title. Johnson's administrator (Caldwell) having legally sold all the interest which the estate of Johnson had in the land to Rattan and taken his note for the purchase-money, it would be a fraud upon Ragsdale's vendees to permit the administrator to reinvest the title in Johnson's estate, without showing that the notes could not be collected from Rattan.

The appointment of J. H. Johnson as administrator *de bonis non*, without proof that there were debts due the estate, was void, especially as two administrators had served four years each prior to his appointment. (9 Tex., 18; 2 Tex., 441; 23 Tex., 449.)

A judgment binds only parties and privies. (4 Tex., 101; 20 Tex., 611, 791; 18 Tex., 268.)

*Jones & Upthegrove,* for appellee.

I. Appellee, as plaintiff below, alleged in his petition that appellants, defendants below, entered upon said land with force and arms, ejecting petitioner therefrom and greatly slandering the said title of said estate to said land, and cutting down and carrying away great quantities of timber.

The petition shows that it is an action for land, and charges the defendants with notice, at the time they purchased, of Johnson's title.

The petition, by an amendment, is indorsed, an action to try title as well as for damages. (Moody v. Holcomb, 26 Tex., 718.)

II. All the objections urged by appellants to the introduction of the transfer of date December 9, 1856, have been acted upon by the court.

III. If the record does show that McClure was notary public and deputy surveyor at the same time, there is nothing in the record showing which office he first held, and in the absence of evidence the presumption is that he was a legal notary public at the time he took Ragsdale's acknowledgment, December 9, 1856; and because he got some of the land from Johnson, I do not see how that disqualified him so that he could not acknowledge Ragsdale's transfer to Johnson.

IV. The appellants introduced in evidence the answer of the defendants in the case of Caldwell v. Rattan, which shows clearly that the court had jurisdiction of the persons of defendants in that suit; and if the court had jurisdiction of the person or subject-matter, its decision could only be reversed upon an appeal or writ of error.   (Sutherland v. DeLeon, 1 Tex., 301; Tadlock v. Eccles, 20 Tex., 782.)

Appellee contends that the decree of the District Court of Hunt county, which was a compromise decree, rendered on the 17th of October, 1870, and acquiesced in for years after its rendition, could not be impeached in a collateral suit. (Buford v. Rosenfield, 37 Tex., 42.)

It is no objection to the decree that the agreement was only signed by Rattan.   (Cannon v. Hemphill, 7 Tex., 184.)

V. If the District Court had the authority to render a decree cancelling the contract between Caldwell and Rattan and others, none but the defendants in that suit could complain, and the testimony of Hart becomes immaterial.

VI. The claim of Johnson was notorious.   (Littleton v. Giddings, 47 Tex., 109; Martel v. Somers, 26 Tex., 558; Crosby v. Huston, 1 Tex., 219.)

MOORE, CHIEF JUSTICE.—Evidently the court did not err in overruling appellants' demurrers to appellee's (plaintiff in this court) petition and amended petitions.   That the owner of land has such seizin by reason of his title, whether legal or equitable, as will support an action of trespass to try title in this State, has been too often recognized to now admit of

question. That he may elect to consider himself ousted, and bring suit against an adverse claimant of the land, even though such claimant has never been in actual possession of it, is equally well settled. (Moody *v.* Holcomb, 26 Tex., 718.) Certainly there is nothing to be found in the case of Stroud *v.* Springfield, 28 Tex., 649, in conflict with these familiar and well-established rules of procedure in the statutory action in this State of trespass to try title, by which it was unquestionably the legislative intention to provide a simple and effectual remedy for determining every character of conflicting titles and disputed claims to land, irrespective of the fact of its actual occupancy or mere pedal possession. The point ruled in the case of Stroud *v.* Springfield is, that the plea of "not guilty" does not admit a trespass on the part of the defendant, but calls upon the plaintiff not only to prove title in himself, but also to prove an actual or constructive trespass by some character of adverse claim, or assertion of title or interest, by the defendant.

The instrument dated December 9, 1856, signed by Martin H. Ragsdale, acknowledging and in effect ratifying the previous sale and conveyance to J. H. Johnson of the portion of the certificate claimed by appellee, appears upon its face to have been duly acknowledged before an officer authorized by the statute to take such acknowledgment, and to have been correctly admitted to record in the county in which the land is situate, on the certificate of such officer. Subsequent purchasers from Ragsdale are, therefore, chargeable with constructive notice of Johnson's equitable title, unless they can in some way impeach or invalidate this record. They seek to do so on the grounds (1) that McClure, before whom the acknowledgment was made, was, by contract with Johnson, to receive a portion of the land, in consideration for his services in locating and surveying it for him; (2) that McClure was claiming and holding the office of surveyor as well as that of notary public at the time he took and certified Ragsdale's acknowledgment, but which of these offices he last

accepted is not shown; and (3) that said acknowledgment was not made in a county for which McClure was commissioned as a notary.

In support of these objections we are referred to the cases of Brown v. Moore, 38 Tex., 645; Johnson v. Brown, 25 Tex. Supp., 120; and Johnson v. Newman, 43 Tex., 628. We cannot perceive, however, that the last two of these cases have any bearing whatever upon the question, and the case of Brown v. Moore merely holds that the grantee in a deed of trust was interested in the conveyance to the extent of his commissions, and was, therefore, disqualified from taking the acknowledgment of the grantors, one of whom was a married woman.

It is a familiar principle, that the deed of a married woman does not take effect or become operative and binding upon her until she makes the acknowledgment prescribed by statute before an officer authorized to take it. Obviously, it would be incompatible with the object and purpose of the law requiring the privy examination of the wife separate and apart from her husband by an officer charged with the duty of explaining the nature of the instrument and examining her, to ascertain whether she had freely and willingly signed the instrument, to hold that the party to whom it is made, and who has a pecuniary interest in it, is competent to take such acknowledgment. This case, it will also be observed, did not involve the validity of a record, or its effect as notice to subsequent purchasers, but merely the execution and validity of the deed itself as between the parties to it.

In the subsequent case of Sample v. Irwin, 45 Tex., 567, the court held, that "one who identifies himself with the transaction, by placing his name on the face of the instrument as the avowed agent of one of the parties, is not competent to give it authenticity as an officer." And this, we think, is as far as this court has ever gone, or can, consistently with sound principles or a due regard to public policy, be asked to go, in the direction insisted upon by appellants.

But, certainly, the difference between this case, as well as that of Brown *v.* Moore, and the one now before the court, is too obvious to require argument or comment for its elucidation. In these cases the court did no more than say that if the certificate required to give effect to the deed, or warrant its record, appeared upon its face and in connection with the instrument invalid and unauthorized, that effect could not be given by the court to the deed or its record. But here we are asked to hold the record of a deed ineffectual for the purpose for which it was required by law to be made, though in all respects apparently correct and in strict accordance with law, on parol evidence adduced by subsequent purchasers long after the deed was recorded, to impeach not the genuineness of the instrument or the verity of the facts stated in the certificate, but to prove matters wholly extraneous thereto, with the view of showing that the officer by whom the certificate was made did not possess the capacity to give the certificate, or was not acting within the sphere of his duty. When an instrument, with the certificate of acknowledgment or proof of execution as required by law, is presented to the recorder, it is made his imperative duty to record it; and we find nothing in the statute, and have been cited to no authority, to warrant our saying, when it has been thus recorded, that the effect of its record, many years afterwards, may be destroyed by parol evidence impeaching the truth of the certificate upon which the record was made, though verified by the official signature and seal of a public officer. Certainly we do not feel inclined, in the absence of authority in its support, to give our sanction to a doctrine so detrimental, in our opinion, to public interest, and so well calculated to undermine and destroy the foundation upon which the holders of recorded titles now rest in security.

There was no error in overruling the objection to the evidence of the witness Upthegrove. His evidence in no way impinges upon the rule prohibiting attorneys from disclosing

confidential communications of their clients. (Greenl. on Ev., sec. 244.) But if the objection had been well taken, the refusal of the court to sustain it would not require a reversal of the judgment; because the parties to whom he testifies he gave notice of Johnson's claim to the land, were chargeable with constructive notice of his title by the record of the instrument of December 9, 1856.

It certainly cannot be claimed that the judgment in the case of Caldwell against Rattan, Stevens, and others was a nullity; and not being void it cannot be impeached, and that, too, by mere strangers, in a collateral proceeding. But we see no just ground of objection to its admissibility in evidence in this case, if appellants were in a situation to urge their exceptions. The District Court of Hunt county certainly had jurisdiction of the subject-matter of the suit. The defendants answered to the action, and admitted that the land belonged to Rattan, and that they were merely his securities for the payment of the note given for it. If Rattan was willing that the title which he held under the administrator's deed should be divested out of him and reinvested in Johnson's estate, we cannot see that appellants have any ground of complaint. Nor can they be heard to say that wrong and injustice were thereby done the estate of Johnson, when no objection has been made to the decree by the heirs or others interested in the estate.

The testimony of Hart seems to be of little moment one way or the other; but we cannot see that it was of any injury to appellants. The most that can be said in regard to it is, that it should have been excluded because of its immateriality; but if so, as it was not calculated to mislead the jury to the prejudice of appellants, they cannot complain.

Johnson unquestionably bought the certificate before its location, as Ragsdale himself testifies, though the written conveyance was not made until afterwards. The failure of Johnson to pay for it, if such was the fact,—which, however,.

16

can hardly be inferred from the contradictory statements of Ragsdale,—did not authorize the vendor to annul the sale.

If the legal title, on the issuance of the patent, passed by estoppel to the heirs of Johnson, who were then the equitable owners of the land prior thereto, (Johnson *v.* Newman, 43 Tex., 628,) it cannot be insisted that the evidence was such as to warrant appellant in asking the protection of the court as innocent purchasers without notice, &c. And, granting that appellants held the legal title, there was certainly abundant evidence, which went to the jury without objection, tending to prove facts which authorize the inference that all of the appellants who purchased before the record of the instrument of December 9, 1856, were chargeable with notice of appellee's equitable title. There was ample evidence to warrant the conclusion that Johnson had fully paid for the certificate. Ragsdale admits the payment of $500 in the original conveyance which he made Johnson, in 1844. His admissions against his interest are certainly admissible against parties claiming under him by subsequent purchase. He also states in one of his depositions that his brother paid him for that part of the certificate sold Johnson, and that it was sold by his brother to Johnson in 1841 or 1842; while the note, which he again testifies was given for it, bears date in 1844. And this note, if the record is correct, cannot now be regarded as a valid claim against Johnson's estate, although it was properly verified by the payee and allowed by the administrator. It does not appear ever to have been presented to or approved by the judge. It must, therefore, be held to have been long since barred by limitation.

The law of the case seems to have been clearly and satisfactorily presented by the court to the jury; and as there was testimony to support their verdict in any new aspect which can be taken of it, the motions for a new trial and in arrest of judgment were properly overruled.

The judgment is affirmed.

                                        Affirmed.