EADES *v.* MORRILTON LUMBER COMPANY.

Opinion delivered November 8, 1926.

1. ACKNOWLEDGMENT—IMPEACHMENT—BURDEN OF PROOF.—In a suit to foreclose a mortgage, one who attacks an officer's certificate of acknowledgment has the burden of proving that the mortgage was not acknowledged.

2. ACKNOWLEDGMENT—IMPEACHMENT—CONCLUSIVENESS OF FINDING. —A finding that an acknowledgment of a mortgage was duly taken *held* not against the preponderance of evidence.

3. MORTGAGES—BURDEN OF PROVING COERCION.—In a suit to foreclose a mortgage, the burden of proof is on a defendant claiming that she signed the mortgage through coercion.

4. MORTGAGES—DURESS—EVIDENCE.—In a suit to foreclose a mortgage, the claim of defendant's wife that she was coerced into signing a mortgage of the homestead *held* not supported by preponderance of the evidence.

5. ACKNOWLEDGMENT—DISQUALIFICATION OF OFFICER.—An acknowledgment of a mortgage taken by a notary who was stockholder and director of the mortgagee corporation is not invalid by reason of that fact.

6. MORTGAGES—RECORD.—When a mortgage with a certificate of acknowledgment, as required by the statute, is presented to the recorder, it is his duty to record it, and such record is notice to subsequent mortgagees.

Appeal from Conway Chancery Court; *W. E. Atkinson,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

The Morrilton Lumber Company brought this suit against J. A. Eades and Almedier Eades, his wife, to obtain judgment upon a promissory note and to foreclose a mortgage given to secure the same.

The suit was defended upon the ground that Almedier Eades signed the mortgage through coercion on the part of her husband, and that neither her husband nor herself acknowledged the mortgage, and that they gave a subsequent mortgage to W. M. Eades on the same property to secure an indebtedness which they owed him. W. M. Eades filed a separate answer, in which he claimed to have a prior lien on the property sought to be foreclosed in the action.

A. C. Neal, manager of the Morrilton Lumber Company, was a witness for it. According to his testimony, the Morrilton Lumber Company furnished materials to J. A. Eades for the purpose of building a home on a two-acre tract of land near Morrilton, Conway County, Arkansas. J. A. Eades failed to pay it for the materials, and it caused a lien under the statute to be filed on said land. Neal made an agreement with Eades to carry the account with interest at the rate of ten per cent. per annum until the fifteen months provided by the statute within which the lumber company might enforce its lien had nearly expired. When the time for enforcing the statutory lien for the materials furnished had nearly expired, Neal informed Eades that he would have to execute a mortgage on the land for the payment of the amount due, or the lumber company would foreclose its statutory lien for the materials. Eades then executed a note to the Morrilton Lumber Company for $688.41, with interest at the rate of ten per cent. per

annum from date until paid, and executed the mortgage sought to be foreclosed in this action.

On the day the mortgage was executed, Neal and M. H. Dean went to the home of J. A. Eades, and Eades and his wife signed the note and mortgage at a table or desk in a room of their home, near the front porch. Mr. Dean and Mrs. Sue Stamper, an aunt of Mrs. Eades, were on the front porch at the time the note and mortgage were signed. After J. A. Eades and his wife had signed the note and mortgage, Mr. Eades and Neal walked out on the porch, and Neal handed Mr. Dean the mortgage. Eades and Neal stepped off the porch and walked around the house. After being gone five or six minutes, they returned, and Neal and Dean left, and took the mortgage with them. Dean filled out the acknowledgment to the mortgage as a notary public, and it was then duly filed for record.

According to the testimony of M. H. Dean, he was on the porch, and saw J. A. Eades and his wife sign the note and mortgage. After Eades and his wife had signed the note and mortgage, Neal handed them to Dean, and all the parties went out on the front porch. Dean first took the acknowledgment of J. A. Eades, Neal and J. A. Eades then walked around the house, and were gone several minutes. While they were out of the presence of Mrs. Eades, Dean took her acknowledgment to the mortgage. She seemed to be in a pleasant frame of mind, and there was nothing to indicate to Dean that she had signed the same on account of the coercion of her husband.

On cross-examination, Dean admitted that Mrs. Sue Stamper was on the porch when he took the acknowledgment of the parties to the mortgage, and also that, at the time, he was a stockholder and a member of the board of directors of the Morrilton Lumber Company. Both Dean and Neal admitted that Eades objected to a clause in the mortgage providing for a waiver of his right of redemption as shown in the written mortgage, and that this clause was stricken from the mortgage before it

was signed. The original mortgage shows that the redemption clause was stricken from it. The record of the mortgage shows that the redemption clause was in the mortgage as recorded. This was explained by the recorder as being due to the fact that the record contained a printed form of mortgage similar to the one in question, and that the officer who recorded the mortgage failed to mark out the redemption clause as shown on the printed form of the record.

J. A. Eades was a witness for himself. According to his testimony, Neal demanded that they sign a mortgage to secure the amount due the Morrilton Lumber Company, on the 10th day of June, 1922, and threatened to foreclose the statutory lien of said company for materials if a note for the amount and a mortgage to secure the same were not signed on that day. Eades went home and told his wife that she had to sign the note and mortgage that day, in order to prevent the Morrilton Lumber Company from foreclosing its lien for materials on their home. His wife seemed to get in a flurry about it, and said she would not do any such thing. Eades told her that it had to be done that evening. He used no bad language to his wife, but simply told her that she must sign the mortgage. His demand amounted to a threat, and his wife knew that, if she did not sign the mortgage, something else might happen. Since the execution of the mortgage, Eades has paid $200 on the amount due on January 13, 1923, and $67.40 on January 3, 1924. According to his testimony, neither Eades nor his wife acknowledged the mortgage. Eades saw Dean there with Neal, but did not know that he was a notary public or that he came to take their acknowledgments to the mortgage.

According to the testimony of Mrs. Eades, Dean stopped out in the front yard, and she and her husband signed the note and mortgage in the front room. Dean did not come in the house at all, and did not take her acknowledgment to the mortgage. Her husband and A. C. Neal were in the room when she signed the mort-

gage. She did not sign it of her own free will. She heard her husband tell Neal that he would not sign the mortgage unless the waiver clause was stricken out, and this was done. Her husband had demanded that she sign the mortgage, and she did not sign it of her own free will and accord. We quote from her cross-examination the following:

"Q. I will ask you, Mrs. Eades, if you will say Mr. Eades demanded and caused you to do things against your will other than, as you say, in the execution of this mortgage and note? A. No sir. He demanded and forced me to sign this. He said they were going to close us out, and we had to sign to keep from being closed out. That was all the demand that he made. That if we didn't sign it they would close us out. Have not read the answer to the complaint that was filed. Q. When was it that Mr. Eades made this statement to you? A. The day you folks came out there. Q. In whose presence did he make this statement? A. My aunt and myself and him, the only ones present."

Again, she was asked if her husband was angry or attempted to use any force, and she replied that her husband said that they would have to sign the mortgage to keep from being put out of their home, but never used any bad words to her.

Mrs. Sue Stamper was also a witness for the defendants. According to her testimony, Dean was in the yard and she was on the front porch when J. A. Eades and his wife signed the mortgage in the front room of their home. She could see all the parties during the whole time that Neal and Dean were there, and knows that Dean never took the acknowledgment of either of them to the mortgage.

Other facts will be stated or referred to in the opinion.

The chancellor found the issues in favor of the plaintiff, and a decree of foreclosure was entered of record. To reverse that decree, the defendants have duly prosecuted this appeal.

*J. A. Eades* and *J. F. Koone,* for appellant.

*M. H. Dean,* for appellee.

HART, J., (after stating the facts). Counsel for the defendants contend that the chancery court erred in finding that M. H. Dean took the acknowledgment of J. A. Eades and Mrs. Almedier Eades, his wife, to the mortgage. The burden of proof was on the defendants to establish this fact. *Miles* v. *Jerry,* 158 Ark. 314, 250 S. W. 34; *Foster* v. *Graves,* 168 Ark. 1033, 275 S. W. 653; *Thompson* v. *Kinard,* 158 Ark. 1057, 272 S. W. 1057; and *Hildebrand* v. *Graves,* 169 Ark. 210, 275 S. W. 1024. Bearing in mind that the burden of proof in this respect was upon the defendants, we do not think that the finding of the chancellor in favor of the plaintiff upon this point is against the preponderance of the evidence. It is true that J. A. Eades and his wife, and their aunt, Mrs. Stamper, all testified that their acknowledgment to the mortgage was not taken by Dean. Eades says that he simply supposed he came as an attorney-at-law for Neal. It appears from the record that Eades is a lawyer. At least he knew that the plaintiff had a lien for material under the statute, which was enforceable. It is difficult to perceive why the plaintiff would let this statutory security expire by limitation, and take a mortgage which would be valueless, as far as third persons were concerned, without acknowledging or recording it.

According to the testimony of the defendants, Dean never attempted to take their acknowledgment to the mortgage. He was a lawyer, and it is difficult to perceive why he would not at least have asked them to acknowledge the execution of the mortgage. Eades admitted that he signed it of his own free will, and inferably admits that he would have acknowledged it if he had been asked to do so. After the execution of the mortgage, he made two payments on it.

Dean testified in a most forceful manner that he took the acknowledgment of J. A. Eades and his wife. He said that, after Eades and his wife had signed the mortgage, Neal handed it to him on the front porch, and he

at once took the acknowledgment of Eades. Eades and Neal then walked off of the porch around the corner of the house, and, while they were absent, Dean took the acknowledgment of Mrs. Eades, and she seemed to sign the mortgage without any compulsion or restraint whatever. She seemed to be in a perfectly good humor, and seemed to have no objection to having her acknowledgment to the mortgage taken.

It is true that Neal was not present when Dean says that he took the acknowledgment of Mrs. Eades to the mortgage, but, according to his testimony, he and Eades had gone around the house for the purpose of allowing Dean to take the acknowledgment of Mrs. Eades in the absence of her husband.

According to the testimony of M. H. Dean, he had had considerable experience as a notary public, and was also a lawyer of several years standing. It would be unreasonable to think that he would have allowed his company to have given up a perfectly valid statutory security, good against every one, for a mortgage that would only be good between the parties to it.

Again, it is insisted that Mrs. Eades was induced to sign the mortgage through the coercion of her husband. Under the authorities above cited, the burden of proof in this respect was also upon her. It is true that both she and her husband testified that she signed the mortgage through coercion; but, when their testimony is considered in its entirety, we are of the opinion that it is not legally sufficient to establish this fact. Mrs. Eades admitted that her husband used no bad language to her, and that he simply told her that she would have to sign the mortgage or else the statutory lien of the plaintiff for materials would be foreclosed and they would be thereby deprived of their home. As above indicated, this testimony falls short of establishing coercion.

Finally, it is insisted that the mortgage is invalid as to W. M. Eades because M. H. Dean, who took the acknowledgment of J. A. Eades and his wife to the mortgage, was a stockholder and director of the Morrilton

Lumber Company. This court has held that the taking of an acknowledgment to a deed or mortgage is an act ministerial in character, and that, where it does not appear from the face of the instrument or the certificate of acknowledgment that the officer before whom the acknowledgment was taken was a stockholder in a corporation, the acknowledgment will not be held invalid on that account. *Davis* v. *Hale,* 114 Ark. 426, 170 S. W. 99. In addition, there must be shown fraud, coercion, or undue influence, as decided in the case just cited.

When a deed or mortgage with a certificate of acknowledgment as required by statute is presented to the recorder, it is his duty to record it, and such record is constructive notice to subsequent mortgagees. Any other rule would destroy the reliability of the public records and lead to most mischievous results. *Bank of Benson* v. *Hove,* 45 Minn. 40, 47 N. W. 449; and *Titus* v. *Johnson,* 50 Tex. 224.

It follows that the decree of the chancellor must be affirmed.