ROBERT WILLIS ET AL. v. WILLIAM R. LEWIS ET AL.

When the defendant claims title to the land in controversy under a deed, and the plaintiff makes affidavit that the deed is a forgery, the burden of proving its execution is devolved upon the defendant. (Paschal's Dig., Art. 3716, Note 840.)

The chief justices of counties had the right to take the acknowledgment of deeds in 1845. (Paschal's Dig., Art. 4978, Note 1089.)

Where one witness (before whom, as chief justice, the deed had been acknowledged) testified positively to the acknowledgment of a deed by the maker, and stated further his impression, that the maker signed the deed in his presence, and other witnesses proved that the maker of the deed could not read or write, there is no necessary conflict of testimony; and even if the impression of the single witness were erroneous, it does not necessarily follow that the force and value of his other statements are thereby impaired, by thus reflecting on the accuracy of his memory with regard to a transaction which had occurred many years before, and when it appeared that the witness was so circumstanced as to render the mistake a natural one.

From the issuance of an unconditional head-right certificate, the presumption arises that the grantee, as required by law, presented himself in person before the board of land commissioners on the day it was granted to him, and such a presumption fortifies the testimony of a witness who affirms that the grantee was present on that day at the place where the board held its session, and where the acknowledgment of a deed, proved by the witness, is alleged to have been made.

The fact that a person was not able to read or write does not necessarily imply that a signature purporting to be his is a forgery. If he acknowledged it to be his, though actually written by another, he thereby adopted

it, and it became his act and deed as truly as if he had signed it with his own hand. (See the opinion in this case for a discussion of the preponderance of evidence for or against the genuineness of a deed impeached as a forgery, and particularly for considerations pertinent to the relative value of affirmative and negative testimony. For the proof, see Paschal's Dig., Art. 4140.)

One positive witness, whose evidence is unimpeached, is of more value than a hundred merely negative witnesses.

While a verdict must appear to be clearly wrong before it will be disturbed by this court, yet, when the jury have manifestly found against the whole weight of evidence, it is not only the right, but the duty of the court to set the verdict aside. (Paschal's Dig., Art. 1470, Note 566.)

APPEAL from Ellis. The case was tried before Hon. NAT. M. BURFORD, one of the district judges.

All material facts appear clearly in the opinion of the court.

*George W. Guess*, for the appellants.

*J. W. Ferris*, for the appellees.

COKE, J.—Of the various errors assigned, all have been abandoned in argument except that which charges the verdict of the jury to be contrary to the law and evidence, and assigns as error the refusal of the court to set aside the verdict on that ground; and as this presents the only question developed in the record deemed material to a decision of the case, none other will be considered.

The land in controversy was patented on the 26th day of April, 1855, to Rees Lewis. Rees Lewis is proved to have died in 1846, and the appellees are admitted to be his children and heirs. Appellants claim title to the land by virtue of a deed of conveyance from Rees Lewis to William S. Beaty, through whom they deraign title to the unconditional head-right certificate of said Lewis, by virtue of which the land was located and patented, alleged to have been executed on the 24th day of February, 1845, and

acknowledged and proved for record on the same day, before James M. Long, chief justice of Travis county.

Plaintiffs made affidavit in the court below in the terms of the statute, denying the execution by Rees Lewis of said deed of transfer, and charging the same to be a forgery.

The only question in the case on which there was a contest in the court below, was as to whether or not this instrument is the act and deed of Rees Lewis. The issue was found against the deed, and judgment rendered in favor of appellees, the heirs of Lewis; and the question for revision here is, as to the sufficiency of the testimony to sustain the verdict. The charge of the court is believed, in the main, to have submitted the questions at issue with substantial correctness to the jury.

The affidavit of forgery devolved upon the appellants the burden of proving the execution of the deed in the common-law mode. There were no subscribing witnesses.

For the purpose of proving its execution, appellants introduced the deposition of James M. Long, the officer before whom it purports to have been acknowledged, and who was at the time chief justice of Travis county, and by virtue of his office authorized to take acknowledgment of deeds for record, and whose certificate, seal, and signature, in the usual form, are found on this deed.

He testifies that he was chief justice of Travis county on the 24th day of February, 1845, and president of the board of land commissioners of that county, and that on that day Rees Lewis, who became personally known to him in 1840, at which time said Lewis lived in Austin, and whom he knew as late as 1845, applied for and received from said board of land commissioners his unconditional head-right certificate for six hundred and forty acres; and that on the same day Rees Lewis acknowledged before him officially, for the purpose of authentication for record, the execution of the deed of transfer in question, and that his certificate, signature, &c., now appearing on said deed, are genuine,

and were placed there by him on the day and in the mode it is there represented. He thinks and believes that Lewis signed the deed in his presence, but does not speak positively on that point. He says positively and emphatically that he did appear before him, and acknowledge its execution at the time and place named in the certificate.

His description of Rees Lewis, his age, occupation, &c., and his recollection that, in 1840, he lived in Austin with Richard Bullock, and his impression that he was a Welchman by birth, in all which he is fully corroborated by witnesses introduced by appellees, show an acquaintance with and a knowledge of the man that utterly precludes any probability that he could have been imposed on by another personating him in the acknowledgment of the deed.

The deed was recorded at Franklin, in Robertson county, but at what time does not appear from the certificate of the clerk indorsed thereon. If permitted to indulge in presumptions respecting the date of its record, we might reasonably infer that the land at that time was included in the limits of Robertson county, as it is only in the county where the land lies that deeds are properly and usually recorded, which could not have been later than April 11, 1846, at which time by law the boundaries of that county were defined, so as to exclude from its limits the territory comprising the present county of Ellis.

On the 22d March, 1856, this deed was recorded in Ellis county.

The witness Long is unimpeached, and his testimony is a direct and positive affirmation of facts, which, if true, establish beyond a doubt the genuineness of the deed in question, and that it is the act and deed of Rees Lewis. (Paschal v. Perez, 7 Tex., 348; Edwards v. James, 7 Tex., 372; McKissick v. Colquhoun, 19 Tex., 148.)

By way of rebuttal, the appellees introduced the depositions of several witnesses who, among other things testi-

fied to, swear positively that Rees Lewis could neither read
nor write, and could not sign his name. Does this conflict
with the testimony of the witness Long? We think not.
Long expressly says that he cannot swear positively that
Lewis did sign the deed in his presence, but that his im-
pression is he did. It might well happen, after the lapse
of so many years, when the prominent fact of the acknow-
ledgment of the deed before him by Lewis was in his mind,
that the impression that Lewis signed it should become a
part of his recollection of the transaction, as it is, with rare
exceptions, the general rule, that men who execute and
acknowledge deeds of conveyance do sign them with their
own hands. If he be mistaken as to that fact, as he virtu-
ally admits in his testimony he may be, and as we think
he is from the proof, we regard it as a mistake entirely
consistent with the honesty and integrity of his testimony,
because he only swears to his "impression" on that sub-
ject. Nor do we believe that it impairs the force and value
of his other statements, by reflecting on the strength of his
memory, because it is an error that, under the circum-
stances, might very naturally grow up in the mind in
regard to the transaction after the lapse of so much time.

The witness, Watkins, introduced by appellees, among
other reasons for believing that Rees Lewis did not exe-
cute the deed in question, testifies that W. H. Thompson
told him that he had obtained Lewis's certificate to locate
for him, and left soon afterwards, (in the year 1844,) and
that from that time until the death of Lewis the latter was
making his home at his (witness') house, or at his neigh-
bor Beaton's, one mile distant, and was never absent more
than a day or two at a time; drawing the inference that
he (witness) must have known it if he had executed such
a deed during that period. It may be true, that Lewis was
never absent more than a day or two at a time, and that
day or two may have been the very time when the deed
was executed. The unconditional certificate was issued to

Lewis on the 25th day of February, 1845, the very day on which the deed in question purports to have been executed and acknowledged.

It will be seen, by reference to the law regulating the granting of unconditional head-right certificates, that, among other things, it was necessary that Rees Lewis should present himself in proper person before the board, and make the oath prescribed by law, before the unconditional certificate could be properly issued to him. The presumption arises from its issuance that he did so present himself in compliance with the requirements of the law. This presumption. fortifies the testimony of Long, who says, and his certificate on the deed so shows, that it was acknowledged before him on that day.

We have adverted to these as the leading strong points of fact relied on by appellees in rebuttal of the proof made by appellants to sustain the deed, neither of which do we conceive to be inconsistent with the truth of Long's testimony, or the genuineness of the deed.

The other circumstances proved—such as that the witness never knew Lewis to have $5 at a time in his life, and Lewis's declarations that he intended to keep this land for his son, &c., while, if accompanied by stronger proof than exists in this case pointing in the same direction, they would doubtless be entitled to consideration by a jury—are, when unsupported, as they are here, too remote and unsatisfactory to claim serious attention.

The testimony in support of the deed is positive and unimpeached.

It is proved, it is true, that Rees Lewis could neither read nor write; yet it is very clear that, although some other person may have signed his name to the deed, if he acknowledged it, as he is said to have done, he thereby adopted it, and it became his act and deed as truly as if he had signed it with his own hand.

The testimony in rebuttal consists of negative, disjointed

circumstances, not inconsistent with the truth of the witness Long's testimony, nor with the genuineness of the deed. The testimony is not believed to be necessarily conflicting.

In Cunningham v. The State, speaking of negative testimony, Mr. Justice Lipscomb says: " One positive witness, whose testimony is not impeached, is worth more than half a dozen who are not certain as to a given fact." (5 Tex., 440.)

In Patterson v. Gaines, 6 How., 588, Mr. Justice Wayne, in speaking of the effect of negative testimony, says that "one hundred such witnesses would not be sufficient to impeach the testimony of one witness swearing positively to the fact."

It is the peculiar and legitimate province of the jury, where the evidence is contradictory, and a verdict must be found on the conflicting statements of witnesses, to decide on the weight and credibility of the testimony; and, on principles long established and repeatedly acted on in this court, their verdict will not be disturbed under such circumstances. And, under any circumstances, a verdict must appear to be clearly wrong to induce this court to set it aside. (Briscoe v. Bronaugh, 1 Tex., 326; Long v. Steiger, 8 Tex., 460; Gammage v. Trawick, 19 Tex., 58.) But it is equally well established that, when the verdict is clearly wrong, where the jury have found manifestly against the whole weight of the evidence, it is not only the right, but the duty of the court to set it aside.

In this case, after making all allowances for the many difficulties attending the proof of a transaction occurring so far back in the past, after all the actors are dead, and when naught but a dim recollection of it remains in the minds of the few survivors who happened to be cognizant of it at the time, we are of opinion that the proof is insufficient to sustain the verdict, and that the court erred in

overruling the motion for a new trial on that ground; for which the judgment must be reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.