**DYSON DESCENDANT CORPORATION, Larry Dyson, Martin White, and Herbert C. Jahnke, Jr., Appellants,**

v.

**SONAT EXPLORATION COMPANY and Sonat Minerals, Inc., Appellees.**

No. 01–92–00054–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1993.

Herbert C. Jahnke and Associates, Herbert C. Jahnke, Jr., Ted Hirt, Houston, for appellants.

Richard L. Merrill, Fabio & Merrill, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and COHEN and EVANS,* JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

Dyson Descendant Corporation, Larry Dyson, and Martin White (the plaintiffs) appeal from a summary judgment in favor of the defendants. The plaintiffs assert a right of

---

* The Honorable Frank G. Evans, retired Chief Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

reverter or an ownership interest in the mineral estate claimed by one of the defendants, Sonat Minerals, Inc., because the Whiting and Runnells deeds underlying the defendants' title are allegedly void. The trial court found no merit in the plaintiffs' assertion and imposed sanctions against them and their attorney, finding that their cause of action had no basis in law or fact.

We hold the plaintiffs failed to raise a material issue of fact on the validity of the Whiting and Runnells deeds. We find the trial court did, however, err in awarding sanctions against the plaintiffs and their attorney. We affirm in part and reverse in part.

### Basis for the Summary Judgment

The trial court, "after hearing, reviewing and examining the pleadings, the Motion for Summary Judgment, the Motion for Sanctions, the Second Motion for Summary Judgment, the Motion for Leave to File Affidavit of Defendants' Attorney in Support of Attorneys' Fees and Request for the Assessment of Additional and Conditional Attorneys' Fees Against Plaintiffs and Plaintiffs' Counsel, the summary judgment evidence, and the arguments of the parties," found as follows:

1) there is no genuine issue as to any material fact;

2) Defendants and Counter–Plaintiffs [Sonat Exploration Company and Sonat Minerals, Inc.], are entitled to summary judgment as a matter of law and this summary judgment disposes of all issues and claims involved in this suit;

. . . .

5) James Dyson and Catherine Dyson, the ancestors of the individual Plaintiffs and persons from whom all Plaintiffs and Cross–Defendants allege to have derived their claim of title in the James Dyson League, A–8, Orange County, Texas, completely divested themselves of all title in the James Dyson League as a result of the following described conveyances which were valid:

a) Warranty Deed dated November 1, 1837, from James Dyson to Samuel Whiting, conveying the North half (N/2) of the James Dyson League, which deed was filed for record on February 4, 1838 . . . (the Whiting deed)

b) Warranty Deed dated November 6, 1837, from James Dyson and his wife Catherine Dyson to H.D. Runnells, conveying the South half (S/2) of the James Dyson League, which deed was filed for record on April 7, 1838 . . . (the Runnells deed)

6) Plaintiffs and Counter–Defendants have failed to establish any reacquisition of title, by limitations, conveyance or otherwise, as to the James Dyson League, either in Plaintiffs or in James Dyson, Catherine Dyson or their issue following the above recited 1837 conveyances to Samuel Whiting and H.D. Runnells;

7) Defendant and Counter–Plaintiff, SONAT MINERALS INC., is the owner of the record title and is entitled to be quieted in its possession of the various oil, gas and mineral interests located within the James Dyson League, A–8, Orange County, Texas, as described in that certain deed dated December 1, 1984, from Boise Southern Company to Sonat Minerals Inc., and filed of record on December 3, 1984, with the County Clerk of Orange County, Texas. . . . (the Boise deed)

Under the terms of this judgment, the defendants prevailed because the trial court found the Whiting and Runnells deeds valid, no reacquisition of title in the Dysons or their issue after the Whiting and Runnells conveyances, and record title in Sonat Minerals, Inc. by virtue of the Boise deed.

When a summary judgment expressly states the ground on which it is granted, the ground specified in the judgment is the only one on which the summary judgment can be affirmed. *Carlisle v. Philip Morris, Inc.,* 805 S.W.2d 498, 518 (Tex. App.—Austin 1991, writ denied). A summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In reviewing the granting of a motion for summary judgment, this Court will take all evidence favorable to the nonmovant as true.

*MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex. 1986); *Goldberg v. United States Shoe Corp.,* 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Summary judgment is proper for a defendant if its summary judgment proof establishes, as a matter of law, that there exists no genuine issue of material fact concerning one or more of the essential elements of the plaintiff's cause of action. *Goldberg,* 775 S.W.2d at 752.

### This Lawsuit

The plaintiffs sued TXO Production Corporation and Sonat Exploration Company on February 16, 1990, and added Sonat Minerals, Inc. as a defendant on August 17, 1990. Upon motion of the plaintiffs, TXO Production was dismissed from the suit on November 1, 1990.

The plaintiffs sought a declaratory judgment that they possessed an ownership interest in the mineral estate and/or a possibility of right of reverter in Railroad Commission Leases # 16479 and # 12299 and in the Whiting parcel and Runnells parcel of the James Dyson League. They generally described the mineral estate at issue as:

A portion of the James Dyson League also referred to as Abstract A–8 duly recorded in the Land Records of Orange County, Texas ("James Dyson League").

The plaintiffs stated that the James Dyson League was divided into two halves, composed of the north half (the Whiting parcel) and the south half (the Runnells parcel). They made the following four types of arguments in their fourth amended original petition[1] to support their claim:

1. The Whiting and Runnells deeds "appear tainted with apparent fraudulent activities" because the recordation dates are added after the fact, entries in volumes A, B, and C of the Jefferson County[2] land records are out of order chronologically, and deed entries appear to be backdated and entered on a Sunday. Therefore, these two deeds should be considered void ab initio.

2. The relevant Jefferson County deed records have been manipulated in a manner that makes them suspect because there is backdating, incorrect order of the deeds, and numerous improper handwritings, penmanships, and signatures.

3. Catherine Dyson, the wife of James Dyson, did not sign the Whiting deed; therefore, it could not convey the homestead and community property of James and Catherine Dyson. Catherine Dyson's signature on the Runnells deed did not have a privy acknowledgment; therefore, it could not convey her interest.

4. The notary, George A. Patillo, who acknowledged the Runnells deed, had an inherent conflict of interest that was tantamount to fraud because he was a relative of the grantee, Runnells, and because he was financially interested in the transaction.

Because of the alleged fraud and the alleged defects in execution and acknowledgment, the plaintiffs contended the Whiting and Runnells deeds are legally ineffective, and that they, as heirs of James and Catherine Dyson, are entitled to an ownership interest and/or possibility of reverter in the mineral estates.

On October 9, 1990, Sonat Exploration and Sonat Minerals filed a plea in abatement, special exceptions, original answer, counterclaim, and motion for sanctions. The defendant and appellee, Sonat Exploration, stated that it owned no interest in the James Dyson League. The defendant and appellee, Sonat Minerals, agreed that it owned various mineral and royalty interests under approximately 3,262.767 acres of the James Dyson League. Sonat Minerals based its record title to these interests on a deed it received from Boise Southern Company dated Decem-

---

1. The third amended petition was filed on August 17, 1990. The defendant's motion for summary judgment was filed on April 18, 1991, and scheduled for oral argument on May 17, 1991. The fourth amended petition was filed on May 16, 1991. It added one additional claim, that the Runnells deed was void because the notary, George A. Patillo, was a relative of the grantee and financially interested in the transaction. A summary judgment hearing was held on August 9, 1991. Summary judgment was granted on September 18, 1991.

2. The James Dyson League was originally located in Jefferson County. It is now in Orange County, which was organized in 1852.

ber 1, 1984, and recorded in volume 583, page 134 of the real property records of Orange County, Texas (the Boise deed).

The defendants moved for summary judgment, asserting that Sonat Minerals owned record title in the mineral interests in question based on the Boise deed. The defendants also contended that, as a matter of law: (1) the plaintiffs had no right of reverter or ownership interest because James and Catherine Dyson had conveyed away all their interest in the James Dyson League by virtue of the Whiting and Runnells deeds, or at the latest, in 1845 through the LeGrand deed;[3] (2) there were no homestead laws or privy acknowledgment requirements in 1837; (3) Catherine Dyson's signature was not required because the James Dyson League was held solely in James Dyson's name and the husband acting alone could convey the interest of his wife and himself; and (4) the deed records are regular on their face, and the plaintiffs did not contend that the deeds themselves were tainted by fraud. In their objections to the plaintiffs' response to the defendants' motion for summary judgment filed on May 23, 1991, and their objections to plaintiffs' motion for extension of time to file supplemental response filed on July 8, 1991, the defendants argued that the plaintiffs provided no evidence to show that on November 6, 1837, the date of the Runnells deed, Patillo was related to Runnells or financially interested in the transaction. They also argue that, even if he was, as a matter of law, such a circumstance would not invalidate the deed.

Attached to the motion for summary judgment were the affidavit of Christine H. Sale, an employee of Sonat Exploration who performed services for Sonat Minerals, and certified copies of the James Dyson land grant, the Whiting deed, Runnells deed, LeGrand deed, and Boise deed. According to the affidavit, Sonat Minerals, by virtue of the Boise deed, was the record owner of the title acquired under that deed; that at the time the Boise deed was executed, Sonat Minerals had neither constructive nor actual notice of any claims of ownership or right of reverter remaining in the heirs of James and Catherine

Dyson; and that Sonat Minerals, since acquiring its interest under the Boise deed, has claimed and exercised sole dominion over the mineral estate conveyed.

In their response to the summary judgment motion, the plaintiffs maintained that the following issues of material fact should defeat the motion:

1. Because Catherine Dyson did not sign the Whiting deed, it could not convey her interest in the homestead and community property.

2. Because Catherine Dyson failed to have her signature properly acknowledged on the Runnells deed, her interests could not have been conveyed.

3. Because the notary, George A. Patillo, was related to and financially intertwined with the grantee, Runnells, the Runnells deed was void.

4. There was general and specific fraud at the time, manifested by false signatures on the same page in the county records where the Whiting deed appears.

5. The Whiting and Runnells deeds appear tainted with apparent fraudulent activities because of recordation dates added after the fact, lack of chronological order in the deed records, and backdating and Sunday dating of deed entries.

6. The LeGrand deed was bogus.

As we noted above, the trial court found no merit in the plaintiffs' claims and granted summary judgment in favor of Sonat Exploration and Sonat Minerals, and sanctioned both the plaintiffs and their counsel.

Preliminarily, we note that the defendants have objected to the naming of the plaintiffs' counsel, Herbert C. Jahnke, Jr., as an appellant, and the naming of Sonat Exploration Company as an appellee, for the same reasons set forth in their motion to strike the appellants' appeal. We overruled these objections in our order on this cause dated December 31, 1992, allowing amendment of the appeal bond. The plaintiffs filed an amended bond, adding Jahnke, on January 14, 1993, and a supplemental transcript show-

---

3. On February 5, 1845, James Dyson executed a deed to all the James Dyson League to Edwin LeGrand (the LeGrand Deed). The deed was recorded on September 3, 1845.

ing the amended bond was filed in this Court on January 28, 1993. To the extent the appellees' motion to strike has not been overruled, we overrule it here.

### Points of Error One, Two, and Four: Deed Validity

In points of error one, two and four, the plaintiffs contend the trial court erred in granting summary judgment because (1) the defendants' summary judgment motion raised only a few specific grounds and failed to reach each and every cause of action alleged by the plaintiffs, (2) the defendants did not conclusively disprove at least one element of each of the causes of action raised by the plaintiffs, and (3) the trial court failed to apply the correct law to the Runnells deed. We disagree.

TEX.PROP.CODE ANN. § 13.002 (Vernon 1984), provides:

An instrument that is properly recorded in the proper county is notice to all persons of the existence of the instrument.

The present statute is not unlike that passed by the Republic of Texas in 1836:

No deed, conveyance, lien, or other instrument of writing, shall take effect as regards the interests and rights of third parties, until the same shall have been duly proven and presented to the court, as required by this act, for the recording of land titles....

Act approved Dec. 20, 1836, 1st Cong., R.S., § 40, 1822–1838 Laws of Texas 148, 156. The filing of a deed is notice to all persons. *Alkas v. United Sav. Ass'n of Texas, Inc.*, 672 S.W.2d 852, 856 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *First Sav. & Loan Ass'n of El Paso v. Avila*, 538 S.W.2d 846, 849 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.). It is a conclusive presumption of law that a proper and legal recording of a deed in the county where the land lies is constructive notice of the recorded deed's existence. *Quarles v. Hardin*, 249 S.W. 459, 462 (Tex.Comm'n App.1923, judgment adopted); *White v. McGregor*, 92 Tex. 556, 50 S.W. 564 (1899). But there are important qualifications to this "conclusive presumption." *See White*, 50 S.W. at 565.

### 1. Forgery

A forged deed is void ab initio. *Hennessy v. Blair*, 107 Tex. 39, 173 S.W. 871, 874 (1915); *Bellaire Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 210 (Tex. App.—Fort Worth 1992, writ denied); *Aguilar v. Martinez*, 294 S.W.2d 756, 757 (Tex. Civ.App.—San Antonio 1956, no writ); *Bibby v. Bibby*, 114 S.W.2d 284, 287 (Tex.Civ. App.—El Paso 1938, writ dism'd). The recording of a forged deed does not give it any vitality. *Bibby*, 114 S.W.2d at 287. No person can be an innocent purchaser of land where one of the links in the chain of title is a forgery. *Pure Oil Co. v. Swindall*, 58 S.W.2d 7, 10 (Tex.Comm'n App.1933, holding approved); *Loots*, 826 S.W.2d at 210.

In their response to the motion for summary judgment, the plaintiffs stated that the Whiting deed "is located on the same page as a forged signature." However, the response made no claim that the Whiting deed is forged, nor is there any summary judgment evidence of such forgery in the record. Accordingly, we conclude there is no material issue of fact that the Whiting deed is forged.

While the summary judgment response did not assert the Runnells deed is forged, the attached affidavit of Charles Dyson stated:

6) Further, I have studied and researched all of said documents and matters herein for over 10 years. I have also reviewed over 10,000 pages of documents concerning Runnels, Le Grande, Whiting, Patillo ... as well as historical accounts of over twenty other scholarly authors and learned treatises written who wrote [sic] about the early history of Jefferson and Orange County, Texas. I have visited over fifty times the County Clerk offices in Beaumont and Orange, Texas as well as every county surrounding Orange County, Texas in Texas and Louisiana as well as New Orleans and Jackson, Mississippi. As a result of my years of research in such area. I possess specialized knowledge skill, experience, training which would assist the trier of fact to understand the evidence of what occurred during the period of 1837–1838 and 1845.

7) Based upon my specialized researched and study I am of the opinion that:

a) *the said Runnels Deed and Le Grande Deed are not genuine entries or deeds* but were part of a land scheme prevalent at the time....

(Emphasis added.)

■ Rule 166a(f) of the Texas Rules of Civil Procedure provides that affidavits supporting or opposing summary judgment must be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Conclusionary remarks in an affidavit are insufficient to raise a fact issue to prevent the granting of summary judgment. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984); *Villarreal v. State*, 826 S.W.2d 621, 623 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd); *Berger v. Berger*, 578 S.W.2d 547, 549–50 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). We find the affidavit of Charles Dyson does not state any facts in support of his conclusionary statement that the Runnells deed is not genuine, nor does he affirmatively state, under oath, that the grantor's signature is forged. Thus, his affidavit does not raise any material issue of fact that the Runnells deed is a forgery.

## 2. Acknowledgment by interested notary

■ Another qualification to the "conclusive presumption" occurs when an improperly acknowledged deed has been placed of record. The recordation of a deed without a proper acknowledgment does not constitute notice. *Hill v. Taylor*, 77 Tex. 295, 14 S.W. 366, 367 (1890) (deed acknowledged before an associate judge in Maryland state court, but not clear if this met requisites of Texas law allowing acknowledgment outside the state). However, the defect in the acknowledgment *must appear on the face* of the acknowledgment. *Titus v. Johnson*, 50 Tex. 224, 240 (1878); *Peterson & Fowler v. Lowry*, 48 Tex. 408, 412 (1877).

■ One who is financially and beneficially interested in a transaction is disqualified from taking an acknowledgment concerning the transaction. *Gulf Prod. Co. v. Continental Oil Co.*, 61 S.W.2d 185, 186–87 (Tex.Civ.App.—Texarkana 1933), *aff'd*, 139 Tex. 183, 164 S.W.2d 488 (1942). However, if the instrument and the notary's certificate are regular on their face, and in no way disclose the interest of the notary in the transaction, the instrument is valid to subsequent purchasers without notice of the defect. *Gulf Prod. Co. v. Continental Oil Co.*, 139 Tex. 183, 164 S.W.2d 488, 493 (1942); *Titus*, 50 Tex. at 240; *Peterson & Fowler*, 48 Tex. at 412.

There is no evidence that, in 1838, the interest of the notary in the conveyance, while not evident on the face of the acknowledgment, rendered a deed void ab initio. In fact, the law is and appears to have been that, *as between a grantor and grantee*, deeds are valid even without a valid acknowledgment. *Haile v. Holtzclaw*, 414 S.W.2d 916, 928 (Tex.1967); *Portis v. Hill*, 30 Tex. 529, 560–61 (1868); *First State Bank in Caldwell v. Stubbs*, 48 S.W.2d 446, 451 (Tex. Civ.App.—Galveston 1932, no writ).

The Runnells deed and its acknowledgment are regular on their face; they do not disclose any relationship of the notary, Patillo, to the grantee, Runnells, or any financial interest of Patillo in the conveyance. As a matter of law, the acknowledgment on the Runnells deed is not defective on its face.

The Republic of Texas passed the following curative act in 1841:

Be it further enacted, That any grant, deed or instrument for the conveyance of real estate ... as well as any and every other deed or instrument required or permitted by law to be registered, and which shall have been heretofore registered, shall, from the passage of this act, be held to have been duly registered, with the full effects and consequences of the existing laws: provided, the same shall have been acknowledged by the grantor or grantors ... before any chief justice of the county court, or before any notary public, or before the clerk of the county court in whose office such record is proposed to be made, or proved before such officer by one or more of the subscribing witnesses, and certified by such officer; any obscurity or

conflict in the existing laws, to the contrary notwithstanding.

Act approved Feb. 5, 1841, 3rd Cong., R.S., § 20, 1838–1846 Laws of Texas 163, 168–69.

Appellants argue that Patillo, acting as a notario, had more of a fiduciary obligation than a mere notary. They assert that the actions of a notario were not affected by the Curative Act of 1841. Although we acknowledge differences in the role of the notarios and notaries, for the purpose of taking acknowledgements their roles were the same, and the Curative Act makes no distinction. Neither will we.

### 3. Homestead requirements

■ The earliest homestead exemption law was enacted by the Republic of Texas in 1839. Act approved Jan. 26, 1839, 3rd Cong., R.S., 1838–1846 Laws of Texas 125, 126; TEX. CONST. art. 16, § 50 comment (Vernon 1993). The act made no mention about the wife's consent to sale of the property. The law was annulled in 1840. The Texas Constitution of 1845 provided:

> The Legislature shall have power to protect by law from forced sale, a certain portion of the property of all heads of families. The homestead of a family not to exceed two hundred acres of land, (not included in a town or city,) or any town or city lot or lots, in value not to exceed two thousand dollars, shall not be subject to forced sale, for any debts hereafter contracted, *nor shall the owner, if a married man, be at liberty to alienate the same, unless by the consent of the wife,* in such manner as the Legislature may hereafter point out.

TEX. CONST. of 1845, art. VII, § 22 (emphasis added). Both the homestead statute and constitutional provision were adopted after the Whiting deed was executed in November 1837 and filed in February 1838.

The plaintiffs seem to concede that there was no homestead law in 1837, but imply that there were homestead rights, citing *Edwards v. James,* 7 Tex. 372 (1851) and *Brewer v. Wall,* 23 Tex. 585 (1859). In *Edwards,* speaking of a land grant, the supreme court said that it formed a portion of the "community property" and was as much under the

control and disposition of the husband as any other portion of the "acquests and gains." *Edwards,* 7 Tex. at 380–81. The husband could sell it or dispose of it in any mode not intended to defraud the wife. *Id.* As we read *Edwards,* the husband could convey away the land grant without the consent of the wife, assuming there was no intent to defraud her. The events in *Brewer* occurred after Texas adopted the homestead law, and the supreme court stated that a husband could not convey away the homestead without the privy acknowledgment of the wife. *Brewer,* 23 Tex. at 588.

We conclude there was no homestead law in 1837 that required the consent of the wife to a conveyance. Accordingly, the failure of Catherine Dyson to sign the Whiting deed did not invalidate it.

### 4. Privy acknowledgment requirement

Similarly, we can find no "privy acknowledgment" requirement before 1846. Act approved Apr. 30, 1846, 1st Leg., R.S., § 1, 1838–1846 Laws of Texas 156. The act required a conveyance of the wife's separate property or of the family's homestead to contain the wife's acknowledgment before a judge or notary public, apart from her husband, that she freely and willingly signed the conveyance. It further required the judge or notary to show her the conveyance, explain it, and make sure she did not wish to retract it. The act had no predecessor, nor was it retroactive. Accordingly, the lack of any privy acknowledgment of Catherine Dyson's mark on the Runnells deed did not invalidate it.

### 5. General fraudulent activities

The plaintiffs generally have asserted that the Whiting and Runnells deeds are tainted with fraud because of backdating, incorrect order of documents, improper handwritings, deeds entered on Sundays, and recordation dates added after the fact in the Jefferson County land records. However, the plaintiffs do not contend, and there is no summary judgment evidence, that any of these problems afflict the Whiting or Runnells deed.

We overrule points of error one, two, and four.

### Point of Error Three: Affirmative Defenses

In their third point of error, the plaintiffs argue the trial court erred in granting summary judgment because the defendants failed to present and conclusively prove each essential element of their affirmative defenses. It is unnecessary to rule on this point of error given our disposition of points of error one, two, and four.

### Point of Error Five: Sanctions

In the summary judgment, the trial court awarded monetary sanctions in attorney's fees against the plaintiffs, jointly and severally, and a monetary sanction of $7,500 in attorney's fees against their counsel, Herbert Jahnke. The trial court found good cause for the sanctions because the plaintiffs' cause of action was frivolous, had no basis in law or fact, was not warranted by good faith argument for the extension, modification, or reversal of existing law, *and* was brought in bad faith. The trial court also found reasons for its sanctions in the prior, unsuccessful attempts by the heirs and issue of James and Catherine Dyson in their similar title claims. *See Bodin v. Gulf Oil Corp.*, 707 F.Supp. 875 (E.D.Tex.1988), *appeal dism'd*, 877 F.2d 438 (5th Cir.1989).

█ The plaintiffs and their counsel argue that the trial court erred in sanctioning them because their claims were not patently unmeritorious, nor frivolous nor lacking any basis in law or fact. They also contend the trial court misapplied *Bodin*, and the sanctions violated various constitutional rights, including substantive due process rights under U.S. Const. amends. V and XIV.

Rule 13 of the Texas Rules of Civil Procedure provides:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215–2b, upon the person who signed it, a represented party, or both.

Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. *"Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law ....*

TEX.R.CIV.P. 13. This Court has recognized that a trial court has the authority to impose sanctions for the filing of a frivolous lawsuit. *Yang Ming Line v. Port of Houston Auth.*, 833 S.W.2d 750, 752 (Tex.App.—Houston [1st Dist.] 1992, no writ). The standard of review is one of abuse of discretion, and we will not disturb the trial court's order unless the court acted without reference to any guiding legal rules or principles. *Id.*

█ Rule 13 requires that the "particulars" of good cause must be stated in the sanctions order. *Zarsky v. Zurich Management, Inc.*, 829 S.W.2d 398, 399 (Tex.App.—Houston [14th Dist.] 1992, no writ); *GTE Communications Sys. Corp. v. Curry*, 819 S.W.2d 652, 654 (Tex.App.—San Antonio 1991, orig. proceeding); *Kahn v. Garcia*, 816 S.W.2d 131, 133 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding). The trial court's particulars are so stated, and summarized above.

Rule 13 sanctions may only and should only be imposed for "good cause." The Corpus Christi Court of Appeals, in *Home Owners Funding Corp. v. Scheppler*, 815 S.W.2d 884, 889 (Tex.App.—Corpus Christi 1991, no writ), suggested that in determining whether rule 13 has been violated, a trial court must examine the facts available to the litigant and the circumstances existing at the time the pleading is filed. Our discussion of points of error one, two, and four upholds the validity of the Whiting and Runnells deeds. That is

not to say that the claims of invalidity were patently unmeritorious or frivolous or had no arguable basis in law or fact. This Court did substantial research into the laws of the Republic of Texas before finding the deeds not to be invalid for the reasons asserted by the plaintiffs.

Clearly, rule 13 is a tool that must be available to trial courts in those egregious situations where the worst of the bar uses our honored system for ill motive without regard to reason and the guiding principles of the law. The rule, however, cannot become a weapon used to punish those with whose intellect or philosophic viewpoint the trial court finds fault. Innovative changes in the law or applications of the law must by necessity come from creative and innovative sources.[4] For the most part these changes resulted from lawyers advocating positions that may have had little or no basis in existing law. By their very definition, changes in the law are different from and in disagreement with what has been historically accepted. We cannot allow rule 13 to have a chilling effect on those who seek change in legal precedent. Like other advocates of change, lawyers seeking change in legal precedent may meet with able opposition, even vehement disagreement, and they may even fail at first. They may never succeed, but they must be given an opportunity to try without fear of unjustified persecution. The plaintiffs' witness, Charles Dyson, asserted in his affidavit (dated May 16, 1991) in support of the plaintiffs' opposition to summary judgment that he had done over 10 years of research in the subject matter of the suit. Counsel researched and briefed Mexican notarial law and the peculiarities of the early law of the Republic of Texas. The plaintiffs came to what we have found to be incorrect conclusions. They have paid for their errors with wasted efforts, wasted emotions, and costs of court.

The trial court found the plaintiffs' claims groundless based in part, on *Bodin v. Gulf Oil Corp.* In *Bodin*, heirs of James Dyson brought a wrongful conversion action against Chevron U.S.A., Inc., Sun Exploration and Production Co., and Exxon U.S.A., Inc. *Bodin*, 707 F.Supp. at 877. The plaintiffs contended they were the rightful owners of the James Dyson League, sought an accounting of the minerals removed, and asked for damages against the defendants for unlawful extraction of minerals. *Id.* The defendants moved for summary judgment on the ground that the plaintiffs could not establish the requisite possessory interest in the extracted minerals to support their conversion claims. *Id.* at 878. In response, the plaintiffs attacked the validity of the Whiting, Runnells, and LeGrand deeds, arguing (1) they were not authentic, (2) they were executed under duress, (3) they constituted a violation of a condition subsequent of the original land grant, and (4) they violated principles of community property law because James Dyson's wife, Catherine, did not sign all three deeds. *Id.* The plaintiffs abandoned these arguments at the summary judgment hearing, and the federal district court considered the abandonment proper because (1) the plaintiffs were unable to produce any evidence to undermine the defendants' proof of the authenticity of the deeds, (2) the only evidence of duress was the fear expressed in James Dyson's 1880 will, some 35 years after he signed the conveyances, (3) the power to enforce any land grant condition lies with the state of Texas, and (4) Catherine Dyson ratified the Whiting deed when she signed the

---

4. For example, before *El Chico Corp. v. Poole*, 732 S.W.2d 306, 309, 314 (Tex.1987), an alcoholic beverage licensee owed no duty to the general public not to serve alcoholic beverages to a person the licensee knew or should have known was intoxicated. Also, in *Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723, 724–25 (Tex. 1990), the supreme court declined to recognize a cause of action for private employees who are discharged for reporting illegal activities. However, the supreme court has created at least one exception to the employment-at-will doctrine: discharge for the sole reason that the employee refused to perform an illegal act, *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985). The supreme court has recently held for the first time that children may recover for loss of consortium when a third party causes serious, permanent, and disabling injuries to their parent. *Reagan v. Vaughn*, 804 S.W.2d 463, 467 (Tex. 1990). However, the supreme court has clarified that, contrary to the broad language in *St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649 (Tex. 1987), there is no general duty not to negligently inflict emotional distress. *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex.1993).

Runnells deed, which referred to the earlier Whiting conveyance. *Id.* The plaintiffs then advanced three theories of reacquisition: redemption, adverse possession, and presumed grant. *Id.* at 879.

The defendants in the *Bodin* case are not the same as those before us here; the plaintiffs and their counsel are not the same. The *Bodin* plaintiffs argued theories of reacquisition that are not argued here; with two exceptions, the *Bodin* plaintiffs attacked the validity of the Whiting and Runnells deeds on grounds different from those asserted here. *Bodin* did not dispose of the issues in this case.

■ Among other arguments, the plaintiffs contend that the sanctions violated their substantive due process rights under U.S. CONST. amends. V & XIV. The due process clause, as applied to sanctions, mandates a reasonable relationship between the harm done and the sanctions assessed. *Glass v. Glass,* 826 S.W.2d 683, 688 (Tex.App.—Texarkana 1992, writ denied); *see Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 700, 102 S.Ct. 2099, 2103, 72 L.Ed.2d 492 (1982); *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991, orig. proceeding). We find the plaintiffs did no harm in the filing of this case. The defendants were asked to do no more than any defendant is called to do in a free society with open courts. The defendants chose to allow 14 months to pass before the filing of their motion for summary judgment. The court made no finding to discredit the integrity of the plaintiffs, and there was no assertion that any factual contention they made was untrue.

Examining the particulars of the sanctions order, we find the trial court abused its discretion in awarding sanctions against the plaintiffs and their counsel for bringing a frivolous suit. We sustain point of error five.

The trial court's order of sanction is unusual in its wording.[5] Since we have found there was no basis for the award of rule 13

sanctions, we must reform the judgment to delete the sanctions, however disguised. The judgment is, therefore, reformed by deleting (1) the paragraph numbered nine (and all of its subparagraphs) at pages three through five, and (2) the paragraphs starting with the last four lines on page six and ending with the last line on page eight.

However, TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986) provides that in a declaratory judgment proceeding, the trial court may award reasonable and necessary attorney's fees as are equitable and just. The summary judgment shows the trial court intended to award attorney's fees against the plaintiffs, although in reforming the trial court's judgment to delete the sanctions, deletion of any attorney's fees to the defendants also occurred. Accordingly, we remand to the trial court the issue of the amount of attorney's fees, if any, to be awarded the defendants.

### Appellees' Request for Rule 84 Damages

■ The appellate courts have the authority to impose a penalty for frivolous appeals. TEX.R.APP.P. 84. This rule should be applied with prudence, caution, and after careful deliberation. We look at the record from the viewpoint of the advocate and ascertain whether it had reasonable grounds to believe the case would be reversed. *McCraw v. Maris,* 837 S.W.2d 646, 652 (Tex.App.—Dallas 1990), *rev'd on other grounds,* 828 S.W.2d 756 (Tex.1992); *Exxon Corp. v. Shuttlesworth,* 800 S.W.2d 902, 908 (Tex.App.—Houston [14th Dist.] 1990, no writ). Before assessing a penalty for a frivolous appeal, we must decide both that the plaintiffs had no reasonable ground to believe the judgment would be reversed and that the appeal was not taken in good faith. *Stewart v. Texco Newspapers, Inc.,* 734 S.W.2d 175, 177 (Tex. App.—Houston [1st Dist.] 1987, no writ). Considering our reasoning and rulings set out above, we deny the appellees' request for rule 84 damages.

---

5. The plaintiffs point out that the structure of the "sanctions" is designed to frustrate an appeal. Under the summary judgment, if the plaintiffs do not challenge the sanctions, they pay no more than $15,000 in attorney's fees as sanctions. If they challenge the sanctions and lose, they pay the sanctions of $15,000 plus an additional $13,500 in attorney's fees. If they challenge the sanctions and prevail, they pay only attorney's fees of $27,500.

We reverse the portion of the trial court's summary judgment awarding sanctions against the plaintiffs and their counsel, render judgment that no sanctions be awarded, and reform the judgment as set forth in this opinion. We affirm the summary judgment as reformed. We remand the issue of attorney's fees, if any, to be awarded the defendants to the trial court.