# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00831-CR
NO. 03-11-00832-CR

**Ex parte Safiq Karedia**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NOS. D-1-DC-08-300752-A & D-1-DC-08-300753-A
HONORABLE CLIFFORD BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Safiq Karedia appeals the denial of his applications for writs of habeas corpus. Karedia pleaded guilty in 2008 to a charge of trademark counterfeiting in an amount between $20,000 and $100,000 and a charge of engaging in organized criminal activity. He was placed on deferred-adjudication community supervision. The trial court later revoked his community supervision, adjudicated him guilty, and assessed a ten-year prison term suspended for eight years of community supervision. Karedia filed these applications for writs of habeas corpus, claiming that his original plea was not knowing or voluntary because his plea counsel provided ineffective assistance. He also contends that the trial court erred by refusing to hold a contested hearing on his habeas applications and that the affidavit supporting the State's opposition to his applications is invalid because the notary has an interest in the outcome of this suit. We will affirm the trial court's denials of the applications.

## BACKGROUND

When Karedia was four years old, he and his family entered the United States from India in 1985 on tourist visas. His father was killed while working at a convenience store, and Karedia, his brother, and their mother overstayed their visas. Karedia and his brother applied for permanent residency status in 2004, and their mother moved toward obtaining full citizenship. That same year, Karedia and his family opened a store at which they all worked. Karedia was listed as the owner.

Police began investigating the store for selling pirated compact and digital video discs as well as merchandise with counterfeit trademarks. In May 2006, police raided the store and seized merchandise, but filed no charges. Karedia hired attorney Malcolm Nettles. After a second raid in November 2007, police arrested Karedia, his brother, and their mother. Nettles agreed to represent all three family members.

Karedia pleaded guilty in 2008 to trademark counterfeiting and organized criminal activity. He signed a plea of guilty that stated in relevant part as follows: "If you are not a citizen of the United States of America, a plea of Guilty or nolo contendere for this offense may result in your deportation, your exclusion from admission to this country, or your denial of naturalization under federal law." At the plea hearing, the court told him that, "[i]n the event you are not a citizen of the United States of America, your plea of guilty here this morning could result in deportation, the denial of admission to this country and other consequences with the Homeland Security Agency." The prosecutor stated and Karedia agreed that he understood that cases against "two relatives" would "be disposed of at the sentencing on this case." The trial court deferred adjudication and placed him on community supervision for seven years.

2

In 2010, the State moved to revoke Karedia's community supervision. At the hearing, Karedia agreed that he had fully understood all the terms and conditions of community supervision. He pleaded true to the allegation that he violated those terms and the law by knowingly possessing an 8-liner designed for gambling purposes, using a building as a gambling place, and conspiring with his mother and brother to commit these acts. The court revoked his probation, adjudicated him guilty in the 2008 case, and imposed a sentence of ten years in prison, but suspended service of the sentence and placed him on community supervision for eight years.

Karedia filed these applications for writs of habeas corpus, asserting that his plea was neither knowing nor voluntary because he did not fully understand his rights and the consequences of his plea due to his counsel's ineffectiveness. He contended that his 2008 plea counsel was ineffective in two ways: (1) counsel misinformed Karedia that his guilty plea would have no adverse immigration consequences if he abided by his probationary terms, and (2) counsel was compromised by the conflict of interest from his simultaneous representation of Karedia's brother and mother on related charges. Karedia attached affidavits from himself and his mother in support of these allegations. He asked the court to reverse his convictions based on the 2008 plea. The State answered the applications, relying on an affidavit from attorney Nettles contradicting Karedia's claims regarding his performance. Nettles's affidavit was notarized by his wife.

The trial court considered the merits of the applications based on the documents filed and on personal knowledge. The court made the following findings relevant to this issue:

(h) The record reflects that Applicant was informed both orally and in writing that if he is not a citizen, a plea of guilty may result in deportation.

(i) Applicant signed the plea document, affirming that he understood the document and that his counsel, Mr. Nettles, read and explained the document to him.

. . . .

(k)     At the plea hearing, the Court orally informed Applicant that he could face immigration consequences if he was not a U.S. citizen.

(1)     Applicant expressed no concern to the Court at the time he entered his plea and directly informed the Court that he had reviewed the plea documents with his attorney.

. . . .

(n)     Mr. Nettles has practiced criminal law for more than 30 years.

(o)     Mr. Nettles denies that he misinformed Applicant about the immigration consequences his plea would have on his status.

(p)     Mr. Nettles further believed that Applicant had an immigration attorney advising him as to those consequences as well.

(q)     Mr. Nettles explains that all parties—Applicant, his mother, and brother consented to the course of action taken.

(r)     Mr. Nettles followed Applicant's instructions of obtaining dismissals of the charges against his mother and brother. This was especially important to Applicant since his mother was in the process of obtaining citizenship.

(s)     This Court is familiar with Mr. Nettles and finds his statement credible.

(t)     Considering this record as a whole, including the plea documents, the transcribed plea hearing, as well as Mr. Nettles'[s] affidavit, this Court finds that Applicant was aware that his guilty pleas would impact his immigration status.

(u)     Further, Applicant has not convinced this Court that a decision to reject the plea offer would have been rational, especially since to challenge the State's case would have required shifting blame onto his own mother.

. . . .

(x)   Finally, Applicant's subsequent conduct of violating the conditions of his release by possessing 8-liners and conspiring with his mother and brother to keep a place of gambling not only reveals that the fear of deportation was not Applicant's main concern but further diminishes the merit of the claims he now raises.

The court also made conclusions of law, including the following:

> (ii) Applicant has failed to meet his burden of proof and his self-serving statements lack credibility. The record reflects that he was admonished and his attorney confirms that Applicant entered his pleas knowing that he would face immigration consequences.
>
> (jj) Applicant has not shown that an actual conflict of interest adversely affected his lawyer's performance when his lawyer proceeded with Applicant's consent and direction. *See Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).
>
> . . . .
>
> (ll) Finally, the Court concludes that counsel's actions did not prejudice Applicant.
>
> (mm) In sum, this Court concludes that Applicant has failed to show that his pleas were entered involuntarily and unknowingly or that counsel's actions adversely affected Applicant.

The trial court refused to grant the relief Karedia requested in his applications for writs of habeas corpus.

**DISCUSSION**

On appeal, Karedia challenges two procedural decisions by the trial court and reiterates his arguments on the substance of his applications. Karedia contends that the trial court abused its discretion by failing to hold a contested hearing on the merits of his applications. He also argues that Nettles's affidavit supporting the State's response to the applications was invalid because it was notarized by someone with an interest in the outcome of the case. Karedia also reiterates his trial-court assertions that his counsel rendered ineffective assistance.

5

**Decision not to hold a hearing**

Karedia contends that the trial court erred by refusing to hold a hearing regarding his applications because the issues are difficult to assess from the cold record. He contends that his claims regarding counsel's misinformation and conflict of interest require credibility determinations that would benefit from development through cross-examination of witnesses. In general, a trial court's ruling in a habeas proceeding should not be overturned absent a clear abuse of discretion. *Ex parte Mann*, 34 S.W.3d 716, 718 (Tex. App.—Fort Worth 2000, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles or when it acts arbitrarily or unreasonably. *Ex parte Wolf*, 296 S.W.3d 160, 166 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). "In making its determination, the court may order affidavits, depositions, interrogatories, or a hearing, and may rely on the court's personal recollection." Tex. Code Crim. Proc. Ann. art. 11.072, § 6(b) (West 2005). The trial court is not required to hold a hearing. *Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.). The trial court in this case did not hold a hearing, concluding that its review of affidavits, review of the record, and personal knowledge of the plea attorney were sufficient to determine the issues. Karedia has not shown and the record does not demonstrate that the trial court abused its discretion.

**Validity of the affidavit**

Karedia contends, for the first time on appeal, that Nettles's affidavit in support of the State's response was invalid because it was notarized by someone with an interest in the outcome of this proceeding—namely, Nettles's wife. Karedia contends that a finding that Nettles was ineffective could have "long reaching ramifications to current and future employment" for

Nettles. He argues that Nettles's wife has an interest in her husband's continued employment both for his income and hers, as she works for him.

Karedia did not preserve this issue for our review. Generally, issues must be presented to the trial court before they can be grounds for reversal on appeal. Tex. R. App. P. 33.1(a). Courts can consider for the first time on appeal some defects in notarization on affidavits submitted in support of summary-judgment motions. *Trimble v. Gulf Paint & Battery, Inc.*, 728 S.W.2d 887, 889 (Tex. App.—Houston [1st Dist.] 1987, no writ). In *Trimble*, the statement relied on by the summary-judgment movant was signed, but the signature was not notarized. *Id.* at 888. An "affidavit" without a notarization and jurat is an unsworn statement and is not proper summary-judgment proof. *Id.* at 889; *see also Coastal Cement Sand Inc. v. First Interstate Credit Alliance, Inc.*, 956 S.W.2d 562, 567 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). The absence of a notarization is a substantive defect and can be considered for the first time on appeal. *Trimble*, 728 S.W.2d at 889. Karedia, however, concedes that a notarization exists but contends that it was problematic because the notary's alleged interest in the outcome of the proceeding called the validity of the notary's actions into question. He does not establish the necessary proposition that this alleged interest constitutes a substantive defect in the affidavit. His failure to raise the issue of the notary's interest at the trial court means he waived his right to argue it on appeal.

Even if we considered the notary's alleged interest a substantive defect that did not need preservation, Karedia's contention that Nettles's wife could not validly notarize Nettles's signature in this case is not directly supported by statute or the case law he cites. *See Phillips v. Brazosport Savings & Loan Ass'n*, 366 S.W.2d 929, 931-32 (Tex. 1963); *Dyson Descendant Corp.*

*v. Sonat Exploration Co.*, 861 S.W.2d 942, 948 (Tex. App.—Houston [1st Dist.] 1993, no writ). As appellant contends, the *Phillips* court held that a person who is financially and beneficially interested in a transaction generally is disqualified to take an acknowledgment concerning the transaction. 366 S.W.2d at 931-32. In that case, one of 52 persons who signed the articles of association for a savings and loan notarized the signatures of the other 51 signatories. *Id.* at 931. The court held, however, that absent indication that the signatures were fake or garnered through fraud, bad faith, or undue influence, the notary's interest as a signatory to the charter did not invalidate her notarizations and, therefore, the charter. *Id.* at 932. Similarly, the *Dyson* court noted the general rule that one who is financially and beneficially interested in a transaction cannot take an acknowledgment of a transaction. 861 S.W.2d at 948. The court further held that, "if the instrument and the notary's certificate are regular on their face, and in no way disclose the interest of the notary in the transaction, the instrument is valid to subsequent purchasers without notice of the defect." *Id.* This case does not concern real-estate records, but its core principle supports the validity of the affidavit at issue.

The notarization of the affidavit in this case is more consonant with that of the notary on sworn pleadings. *See, e.g.*, *Wortham Indep. Sch. Dist. v. State*, 244 S.W.2d 838 (Tex. Civ. App.—Waco 1951, writ ref'd n.r.e.); *see also Walnut Equip. Leasing Co. v. J-V Dirt & Loam*, 907 S.W.2d 912, 918 (Tex. App.—Austin 1995, writ denied). In *Wortham*, one of the relators notarized the verification of the pleading made by another relator. 244 S.W.2d at 842. Although the court stated that the notary's interest in the suit would not have disqualified him from administering the oath, the court held that when objection was made to the interested notary at the trial court, the amended verification notarized by the court clerk cured the defect, if any, in the original

8

pleading. *Id.* In *Walnut*, this Court held that the failure to object to the absence of sworn pleadings when they are required waives that issue on appeal. 907 S.W.2d at 918. The essential act is the affiant's swearing that the statements in the affidavit are true, not whether all technical aspects of the affidavit process are satisfied. *See generally Smith v. State*, 207 S.W.3d 787, 792 (Tex. Crim. App. 2006) (swearing officer's failure to sign affidavit did not invalidate it or warrant based on it when other evidence shows that the officer swore to the truth of the facts in the affidavit before the issuing magistrate).

The record in this case does not require reversal. Karedia did not preserve the alleged error for appellate review and, even he did, we are not persuaded by his argument. Karedia does not allege or cite facts showing that the notary's interest impaired her function as a notary. The notary's alleged interest in the outcome of the proceeding is indirect at best. This is not a situation in which she necessarily benefits from the document her notarization authenticates: she does not stand to win or lose a verdict based on the affidavit and the record does not prove that her indirect interest will be harmed even if the affidavit or the response it supports fails. The record does not support Karedia's assertion that the notary is interested in the outcome of his applications for writs in a way that disqualified her from notarizing the attorney's affidavit.

**Ineffective assistance of counsel**

Karedia challenges the merits of the trial court's denial of relief regarding his applications for writs of habeas corpus. He contends that his counsel's ineffective assistance rendered his plea involuntary and not knowingly entered.

**Standards of proof and review**

To prevail on a post-conviction writ of habeas corpus, the applicant bears the burden of proving by a preponderance of evidence the facts that would entitle him to relief. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

When the challenge to the guilty plea is based on ineffective assistance of counsel, courts apply the two-part *Strickland* test. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). An applicant must show (1) that his counsel's performance was deficient and (2) "that there is a 'reasonable probability'—one sufficient to undermine confidence in the result—that the outcome would have been different but for his counsel's deficient performance." *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005) (citing *Strickland*, 466 U.S. at 694). The applicant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). In the context of guilty pleas, the first half of the *Strickland* test is applied in the same manner as in other contexts. *See Hill*, 474 U.S. at 58. In other words, the applicant must show that counsel's advice "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The "prejudice"

10

requirement, on the other hand, is applied somewhat differently. The focus of the prejudice inquiry is "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. In other words, in order to satisfy the "prejudice" requirement, the applicant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id*.

In reviewing the trial court's decision to grant or deny habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling and uphold that ruling absent an abuse of discretion. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Ex parte Karlson*, 282 S.W.3d 118, 127 (Tex. App.—Fort Worth 2009, pet. ref'd). We give almost total deference to a trial court's factual findings when supported by the record, especially when those findings are based upon credibility and demeanor. *Garcia*, 353 S.W.3d at 787 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). Moreover, "a reviewing court will defer to the factual findings of the trial judge even when the evidence is submitted by affidavit." *Ex parte Thompson*, 153 S.W.3d 416, 425 (Tex. Crim. App. 2005) (citing *Manzi v. State*, 88 S.W.3d 240, 242-44 (Tex. Crim. App. 2002)). "When the trial court's findings of fact in a habeas corpus proceeding are supported by the record, they should be accepted" by the reviewing court. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (citing *Ex parte Evans*, 964 S.W.2d 643, 648 (Tex. Crim. App. 1998); *Ex parte Jarrett*, 891 S.W.2d 935, 940 (Tex. Crim. App. 1994)). We afford the same deference to the trial court's application of the law to the facts, to the extent that the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007).

**Counsel's advice regarding immigration**

Karedia contends that plea counsel rendered ineffective assistance by failing to properly admonish him of the immigration consequences of his plea. The Supreme Court has held that counsel's "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel" and that *Strickland* applies to a claim that counsel's advice regarding the risk of deportation was deficient. *See Padilla v. Kentucky*, 130 S. Ct. 1473, 1481-82 (2010). According to the Supreme Court, "The weight of prevailing professional norms supports the view that counsel must advise [his] client regarding the risk of deportation." *Id*. at 1482. However, the extent of counsel's advice depends on the terms of the relevant statute. When "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence" of a conviction, *i.e.*, the "deportation consequence is truly clear," counsel's advice concerning the risk of deportation must be "equally clear." *Id*. at 1483. On the other hand, "[w]hen the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id*.

The issue on appeal is whether the evidence in the record supports the trial court's conclusion that Karedia did not receive ineffective assistance of counsel. It is undisputed in this appeal that Karedia's guilty plea and term of deferred adjudication community supervision constitutes a conviction for federal immigration law purposes. *See Moosa v. I.N.S.*, 171 F.3d 994, 1001, 1006 (5th Cir. 1999); *see also* 8 U.S.C. § 1101(a)(48). We must determine whether the record supports the trial court's determination that he pleaded guilty having been properly advised of the consequences of that plea. The key elements of the record we will review include the affidavits of

12

Karedia, his mother, and Nettles; the written guilty plea signed by Karedia; and the reporter's record of the plea hearing.

In his affidavit, Karedia swore that Nettles misinformed him as follows:

> But Mr. Nettles told me that if I received only deferred adjudication, I would have no immigration problems, unless I violated my probation, my probation was revoked, and I received prison time. If I received prison time, Mr. Nettles informed me, immigration could deport me. But he said if my deferred probation was dismissed in a couple of years, I would have no conviction and therefore no immigration problems. Immigration was a very important issue for me because I have lived in the United States since my early childhood.

Karedia contends that the misinformation persuaded him to take a plea deal that he otherwise would not have taken:

> If I had known that there were other charges that could have been brought that would not affect my immigration status, I would have made sure my attorney negotiated for that. I would have gladly taken more prison time if it meant that I was not at risk of being sent back to India and having a lifelong bar on my reentry to the United States. Even if negotiations did not work to give me a better plea deal, I would not have pled guilty to these charges; I would have gone to trial, since the most important thing for me is staying in this country.

Karedia's mother made similar statements in her affidavit. She stated that Nettles

> told us that Safiq would not have any immigration consequences with this plea deal because he was receiving deferred adjudication, unless his community supervision was revoked and he got time in prison. I understood from Mr. Nettles that it was the prison time that mattered, and so the deferred adjudication would not "count" as a conviction for immigration purposes unless prison time resulted.

Karedia contends that, because Nettles misinformed him, his guilty plea was not knowing and voluntary.

13

With its response, the State filed an affidavit from Nettles, who denied misinforming Karedia. Nettles stated that he believed Karedia was being advised by a Houston immigration attorney. Nettles further swore that he had worked as a prosecutor in Cameron County, Texas,[1] and that he was "well versed in immigration consequences of a felony conviction and that Deferred Adjudication was not recognized by the Federal Government" Nettles swore that he knew "the collateral consequences of a felony conviction. Mr. Karedia was fully informed of this matter both by me and the judge at the time of the plea. That he says I did not explain this to him is a convenient, but understandable, lie." Nettles also rejected the idea that he should have bargained for a plea to lesser offenses with less harsh immigration consequences. Nettles swore that "[t]his was the best deal offered and was not going to change. To say I should have bargained for these other outcomes assumes those outcomes were being offered or were available." Nettles also points out that Karedia's counterfeiting offense includes lying about the origin and value of a good. Nettles infers from those offenses a tendency to lie.

Karedia's signed guilty plea contains the following written admonishment: "If you are not a citizen of the United States of America, a plea of Guilty or nolo contendere for this offense may result in your deportation, your exclusion from admission to this country, or your denial of naturalization under federal law." In the initial plea hearing, the trial court told Karedia that, "[i]n the event you are not a citizen of the United States of America, your plea of guilty here this morning could result in deportation, the denial of admission to this country and other consequences with the Homeland Security Agency."

---

[1] Cameron County, Texas is on the border with Mexico.

14

We conclude that the record supports the trial court's decision. The records of the plea hearing support finding that Karedia was told in open court and in a document he signed that deportation and barred reentry were potential consequences of his plea. The affidavits filed concerning these applications conflict on what Nettles told Karedia about the immigration consequences of his plea. Ultimately, the trial court had to make a credibility determination and did, favoring Nettles, whose statement was consistent with court records. The deferential standard of review, combined with the court's records, does not permit us to reverse the trial court's determination that Nettles did not provide ineffective assistance of counsel.

### Counsel's alleged conflict

Karedia complains that Nettles's simultaneous representation of Karedia's mother and brother caused Nettles to render ineffective assistance of counsel. Karedia stated in his affidavit that Nettles never warned him or his family members that his joint representation of all three would potentially create conflicts or that they should find separate lawyers to pursue their individual interests. Karedia swore that, had Nettles properly informed him about how Karedia's interests might conflict with Karedia's family members' interests, he would have hired his own lawyer. In her affidavit, Karedia's mother stated that "Mr. Nettles at no time ever discussed with me or my two sons any conflicts with jointly representing the three of us in our criminal proceedings."

In his affidavit, Nettles asserted that Karedia's plea was the result of a strategy for the three defendants coordinated by Karedia:

> As for the issue of dual representation, I followed the instruction of Mr. Karedia in obtaining the dismissal of charges for his mother and brother. Their memories,[sic] are understandably faulty. That a conflict of interest is now raised is laughable. From the time these cases were indicted all parties agreed that if

15

Safiq Karedia would accept responsibility for the charges then his mother and brother would have their charges dismissed. This was particularly important as his mother was in the process of obtaining citizenship and getting the charges dismissed was critical. The basis of the whole agreement was their knowledge that these criminal charges would have immigration consequences.

Faced with conflicting versions of events, the trial court once again chose to believe Nettles rather than Karedia and his mother. The court concluded that Karedia had not shown an actual conflict of interest. Based on the record before us, we cannot say that the trial court erred by reaching that conclusion.

Because we have concluded that the trial court did not err by concluding that Karedia failed to show that his counsel misinformed him about the immigration consequences of his plea and failed to show that conflicts from his counsel's representation of family members affected his case, we must further conclude that the record sufficiently supports the trial court's ultimate conclusion that Karedia failed to show that his pleas were entered involuntarily and unknowingly.

We affirm the trial court's denial of the relief requested in Karedia's petition for habeas corpus.

 

 

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed: February 15, 2013

Do Not Publish